# Brown's Appeal.

1. The scope of the statutory powers of the Orphans' Court does not warrant and its forms are not adapted to an inquiry into independent transactions in which third parties who are neither creditors nor distributees are concerned. Yet where the adjustment of a decedent's estate involved at the same time the adjustment of the affairs of a partnership of which the decedent and the accountant were both members, and this adjustment was acquiesced in by the surviving partners, and nothing remained to be paid or collected, it is too late for the accountant, sixteen years after he invoked the aid of the Orphans' Court in his own behalf, to allege that the court did not possess jurisdiction.

2. A liquidating partner is not entitled to compensation for his personal services in settling up the partnership business.

3. Where there was no satisfactory evidence of fraud to take the case out of the general rule, that in the absence of express stipulation no interest is chargeable on the accounts of partners between themselves, it was right to correct the accounts of a liquidating partner by surcharging him with the amount of interest he had included in those accounts.

4. If the survivors of a partnership carry on the concern and enter into new transactions with the partnership funds, they do so at their peril, and the representatives of a deceased partner may elect to call on them for the capital with a share of the profits or with interest. If no profits were made, or even if a loss is incurred, they must be charged with interest on the funds they use, and they must bear the whole loss.

February 13th 1879. Before SHARSWOOD, C. J., GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ. MERCUR, J., absent.

Appeal from the Orphans' Court of *Philadelphia county:* Of July Term 1876, No. 67.

[Brown's Appeal.]

Appeal of John H. Brown, administrator *de bonis non, cum testamento annexo,* of James W. Brown, deceased, from the decree of the court, confirming the report of the auditor and ordering the accountant, John H. Brown, to pay to Mrs. Ellen H. Brown the sum of $8432.74, and to her trustee the sum of $15,470.

The essential facts, together with the substance of the rulings of the auditor, John P. O'Neill, Esq., will be found stated in the opinion of this court. The opinion of the court in confirming the report of the auditor, was delivered by Hanna, J. The assignments of error were to the various items of surcharge, as set forth in the opinion of this court, and that " the court erred in assuming to take jurisdiction to settle partnership accounts, when one only, of four surviving partners, was before them."

*Anthony A. Hirst, William M. Smith* and *William A. Porter,* for appellant.—There are other partners, likewise interested in the suit, who are not in court, and it is sought, notwithstanding that fact, to settle the accounts between them and the decedent in an administration account in the Orphans' Court, in a proceeding in which they have not participated, and with which they have nothing whatever to do. We cannot take an account of the partnership concerns as between the partners themselves in the Orphans' Court, and, until an account of the partnership concerns is taken, it is impossible to tell whether one partner is really debtor or creditor to the other partners. The accounts of these partners remain unadjusted, and yet it is in effect here decreed that one partner shall recover from another money received on partnership account, and which may actually belong to one or more of the other partners who are not now in court or parties to this proceeding.

The court therefore erred in assuming to take jurisdiction, because, even if there were no other parties actually interested in or affected by the result, the only proper remedy was by a partnership bill in equity: Story on Partnership 367, 557 ; Collyer on Partnership, Perkins ed., 298.

It is not disputed that interest cannot be charged as between partners, in the absence of an agreement to that effect, or where, from lapse of time and neglect to charge interest, an agreement not to charge may be presumed, but we contend that the rule has no application to such a case as this, where the liability was carefully and purposely concealed by one partner from his co-partners for many years, and where, from the nature of his position in the firm and assignment of duties to him in the business, complete opportunity was afforded him to effect the concealment. Time, as well as negligence, must be computed only from the date of discovery of the fraud, if there be any in the transaction. The surviving partners were interested to the extent of sixty-seven and a half per cent. of the whole, and they were therefore entitled to the widest

[Brown's Appeal.]

latitude in extending, modifying and discharging the contracts and liabilities of the firm for the purpose of saving themselves as well as the estate of the deceased partner, provided they continued in good faith to devote themselves to the primary object of winding up the business. They were not only entitled to close up the affairs of the firm, but, as survivors, they had all the rights, duties, powers and authorities of the partnership: Evans v. Evans, 9 Paige 178. They were entitled to receive the debts, sell the goods, pay the obligations of the firm, fulfil outstanding contracts, and are not liable for losses, if such are made in good faith and without abuse or misapplication of the funds or property of the partnership: Phillips v. Phillips, 3 Hare 281.

The argument of the appellees is founded on the theory that there was a new partnership formed in February 1860. There is no evidence to sustain such a theory.

*Montelius Abbott, Samuel C. Perkins* and *David Webster*, for appellees.—The appellant is both an administrator and a surviving partner of the decedent. The inventory filed embraced the interest of the decedent in the firm dissolved by his death, the successor of prior firms. For the disposition of that interest the appellant is accountable as administrator. By Act of 16th of June 1836, § 19, the Orphans' Court having jurisdiction "in all cases" * * * " wherein" * * * " administrators may be possessed of, or are in any way accountable for any real or personal estate of a decedent," that jurisdiction cannot certainly be ousted by the nature of the evidence to be investigated, so long as the question and its decision are strictly within legitimate inquiry.

The Orphans' Court in its sphere being " essentially a court of chancery," the ordinary principle of chancery applies that the jurisdiction having rightfully attached, it " will dispose of every subject embraced within the circle of contest:" Shollenberger's Appeal, 9 Harris 340; Bull's Appeal, 12 Id. 288; Black's Exr's v. Black, 10 Casey 357. This is not an attempt to surcharge Mr. Brown, but to make him pay that which he had discharged without authority. The jurisdiction of the Orphans' Court is undoubted : Gilbert's Appeal, 28 P. F. Smith 266; Rice's Appeal, 29 Id. 168; Dundas's Appeal, 23 Id. 474; Kelly's Appeal, 4 Harris 59.

The appellant, as administrator, was not permitted to charge the estate, which he attempted to do, with the loss of the business continued after the decedent's death, and he was charged with interest on decedent's share of the dissolved firm's assets allowed by him to be used to the disadvantage of the estate. Whiteside v. Whiteside, 8 Harris 473 ; Ashford v. Ewing, 1 Casey 213 ; Kittera's Estate, 5 Harris 416 ; Dundas's Appeal, 23 P. F. Smith 479 ; Rice's Appeal, 29 Id. 182 ; Lisenbigler v. Gourley, 6 Id. 172, all sustain the jurisdiction, while Gilbert's Appeal, 28 P. F. Smith 266, presents its

actual exercise in a like case, where an administrator was also a surviving partner.

The surviving partner continuing the estate at risk, detaining its funds, mixing the same with his own, or using them, or continuing the business, does so at his own peril, and is liable to be charged with interest: Taylor *v.* Young's Adm'r, 2 Bush 432; Mumford *v.* Murray, 6 Johns. Ch. 14; Booth *v.* Parks, 12 Eng. Ch. 228; 1 Molloy 465; Washburn *v.* Goodman, 17 Pick. 519; Millard *v.* Ramsdell, Harr. Ch. 372; Callaghan *v.* Hall, 1 S. & R. 241; Jos. Parker's Estate, 14 P. F. Smith 311; Norris's Appeal, 21 Id. 106; Gilbert's Appeal, 28 Id. 266; Laughlin *v.* Lorenz, 12 Wright 275; Lind. on Part. *890.

Mr. Justice WOODWARD delivered the opinion of the court, May 5th 1879.

In his third assignment, the accountant alleges that "the court erred in assuming to take jurisdiction of partnership accounts, when one only of four surviving partners was before them." It was agreed at the argument, on the part of the appellees, that if the adjustment of the decedent's estate required the adjustment, at the same time, of the affairs of the partnership of which the decedent and the appellant had been members, the Orphans' Court was not the proper tribunal to ascertain the responsibilities of the appellant as a partner, or the rights of the estate of the decedent in the assets of the firm. The opinions expressed and acquiesced in by counsel were undoubtedly accurate. The scope of the statutory powers of the Orphans' Court does not warrant, and its forms are not adapted to, an inquiry into independent transactions in which third parties, who are neither creditors nor distributees, are concerned.

But this case stands on a peculiar footing. James W. Brown died in February 1860. From the year 1832 to the year 1841, he had been in partnership with his cousin, John H. Brown, the appellant, and James Brown, in Pittsburgh, under the firm name of John H. Brown & Co. On the 1st of January 1841, a new agreement was entered into between John H. Brown and James W. Brown, by which it was stipulated that they should enter into the dry goods jobbing business in Philadelphia for five years; that John H. Brown should be the resident partner; that James W. Brown should supervise the business of the house in Pittsburgh; and that William R. Brown should have the rights of a partner in the Pittsburgh house, subject to the decision of John H. and James W. Brown, "the emoluments of the said service to be paid exclusively by the said James W. Brown." James W. and William R. Brown were brothers. The new firm began business in Philadelphia, and James W. Brown remained in Pittsburgh, to control and close up the business of the old partnership there. He had possession of the books, and had charge of the correspondence and of the settle-

ment with the debtors and creditors of the house. The parties continued to act under the agreement of 1841 until James W. Brown died. John H. Brown became his administrator *cum testamento annexo*, and settled his first account on the 13th of February 1861, which in due course was confirmed by the Orphans' Court. In it the accountant charged himself with the interest of the decedent in the assets and credits of the firm of John H. Brown & Co., valued at $20,000, and took credit for the amount, not then realized, of $17,253.93. A second account, filed the 19th of May 1865, was referred to an auditor on the 29th of June in the same year. The settlement of the estate was delayed by various causes, and the final report was not filed until the 22d of May 1876. It was confirmed by the Orphans' Court on the 29th day of the same month.

Meanwhile, the accountant was employed in settling the accounts of the partnership, and ascertaining the relation borne to it by the decedent's estate. Other persons had been members of the firm, but the accountant was permitted and undertook to act as managing and liquidating partner. The auditor has reported : " In the earlier stages of the audit of this second account, it was represented by John H. Brown, when asked by Mrs. Brown about James W. Brown's interest in John H. Brown & Co., that it had been impossible to make any settlement or statement that would be reliable, but they were now in a position to pay all liabilities, and were about to settle and examine their books as soon as possible." He has reported also : " John H. Brown presented to the auditor a settlement of John H. Brown & Co., to show that James W. Brown had nothing in that firm." This settlement consisted of four accounts stated, the first and second of which were called " Balances of firms Nos. 1 and 2, the first ending January 1st 1857, and the second ending January 1st 1860," and the third and fourth of which were entitled " James W. Brown in account with John H. Brown & Co." Three of the statements were presented to the auditor on the 9th of June 1870, and exhibited an indebtedness by the decedent's estate to the firm of $9280.38, as of the 1st of May 1869. The fourth was presented almost two years and a half later, on the 25th of November 1872, and in that the amount of the indebtedness was alleged to have been on the 1st of May 1869, $15,964.25. On the part of the appellees, errors were charged in a variety of items in the accounts which had entered into the settlement. The auditor found the allegations of error well founded, and the statements were corrected by adding to and withdrawing from the proper entries the several specific sums thus found to have been improvidently included, and with those sums the appellant was surcharged.

John H. Brown brought the decedent's interest in the firm into the Orphans' Court by making it an item of debit and an item of credit in the first account. He assumed to settle the accounts of the partnership. He was engaged in the performance of this

[Brown's Appeal.]

·duty from the date of the death of James W. Brown until November 1872, when his final statement was presented. This was a period of almost thirteen years. The other surviving partners acquiesced in all the action which he took throughout. The settlement of the partnership, as such, was effected. So by word and act he himself declared. Nothing remained to be paid, to ·be collected, or to be compromised. Whatever the interests of the other surviving partners may have been, they were intrusted to the liquidating partner, and, with the settlement of the other interests involved, are to be regarded as adjusted. The issues before the auditor grew out of a statement of accounts between the accountant, as the surviving, active and managing member of a firm the affairs of which were closed, on the one hand, and the estate of the decedent on the other. More than nineteen years have gone by since James W. Brown died. This litigation began fourteen years ago. Scarcely any case, involving rights of property only, can be conceived that would work out results more oppressive and disastrous than the results that would follow the setting aside of these entire proceedings on the ground that the Orphans' Court did not possess the jurisdiction which the appellant as long ago as 1861 invoked in his own behalf.

A reference to the points in controversy before the auditor and in the Orphans' Court remains to be made. This will be done with as little of detail and elaboration as possible.

1. One of the items entering into the accounts which produced the balance due from the decedent, was an entry in the books of the firm of $1537.50 in favor of the appellant for his personal services in settling up the business. This the auditor struck out. That a liquidating partner is not entitled to compensation for such services is a well-established rule: SHARSWOOD, J., in Gyger's Appeal, 12 P. F. Smith 73 : referring to Beatty v. Wray, 7· Harris 516, and Brown v. McFarland, 5 Wright 129.

2. In 1865, a charge was made against the decedent on the firm books of $3000. The ground on which the appellant rested this action was, that on the 27th of October 1847, William R. Brown drew for this sum on James W. Brown; that the draft was paid out of the funds of John H. Brown & Co., William R. Brown receiving the money for his private use; and that the amount was charged in the cash book "on memorandum" in red ink, by the direction of James W. Brown, to Bailey, Brown & Co., a firm of which John H. Brown was, and James W. Brown was not, a member. In support of the charge against the decedent, the appellant relied on the the testimony of Mr. Waterman, the bookkeeper, and William R. Brown. In some respects, the statements of both witnesses were vague. Mr. Brown said that he drew on John H. Brown & Co. for something like $3000 in the year 1847, or near that time; that he did not recollect what the purpose of the draft was; and that he

drew under authority of some kind which he could not remember. Mr. Waterman testified: "I must have seen the draft. It was William R. Brown's draft, drawn on James W. Brown individually. I don't remember to whose order it was made payable. I do not recollect how it was presented." He said afterwards: "That item was never entered in the accounts presented by Bailey, Brown & Co.; that item was not charged against them in the ledger; it is included in the balance charged." At the argument here the counsel for the appellees insisted that the item "included in the balance charged" was this item of $3000; that the "balance" was a sum of $1481.17, charged in June 1848, when for the first time an account was opened with Bailey, Brown & Co., and included all the red-ink charges against them on the cash book, and that thenceforward red-ink entries against them ceased. In support of this assertion, the counsel referred to the books of John H. Brown & Co., which were in evidence. Under the evidence before him, the auditor found that the charge of this item was unjust. The witnesses were before him. The original charge had been made in 1847. The charge against the decedent was made in 1865, and the appellees were entitled to the benefit of the presumption arising from the lapse of time. And William R. Brown, as well as John H. Brown, was a member of the firm of Bailey, Brown & Co. A review of the evidence has produced no such conviction of mistake on the part of the auditor as to require that his decision should be reversed.

3. An entry appeared in the journal kept in the Philadelphia house, as of the 30th of June 1865, charging James W. Brown with the sum of $9523.24, due from him "on books at Pittsburgh, say, January 1st 1841," together with net interest from that date to the 1st of October 1865, a period of twenty-four years and nine months, amounting to $13,337.46. Admitting that in the peculiar circumstances surrounding the firm between 1859 and 1865, losses and the shrinkage in values made the charge of the principal sum justifiable, the appellees resisted the demand for interest. It appears that James W. Brown remitted to Philadelphia in 1841 assets amounting in value to $29,000, with instructions to the bookkeeper to credit them in the proportion of two-thirds to John H. Brown and one-third to himself, and that he participated in the profits those assets subsequently produced. The auditor found that there was no satisfactory evidence of fraud to take this case out of the general rule that, in the absence of express stipulation, no interest is chargeable on the accounts of partners between themselves. Indeed, it has not been alleged that James W. Brown was guilty of intentional bad faith. While the appellant's counsel urged with great ability all the considerations tending to show that the acts of the decedent in charging the item of $3000 to Bailey, Brown & Co., and in overdrawing his Pittsburgh account and obtaining an undue credit in Philadelphia, were fraudulent in fact, they stated that they

were authorized by their client "to declare that he does not believe that at the time he committed these acts, James W. Brown had any fraudulent intent and purpose in his mind." Mr. Burke, an expert witness, testified that he had been over all these books, and nowhere, except in this instance, did he discover that interest had been charged on partners' accounts. The auditor found the fact accordingly. It is to be kept in mind that the appellant could have had access to all the Pittsburgh books during the whole lapse of these twenty-four years. By the partnership articles of 1841, while James W. Brown was to supervise the business of the Pittsburgh house, it was expressly provided that "such control" should "undergo the approbation of the said John H. Brown." The fact is not to be lost sight of also that the final report of the auditor was in the decedent's favor for a large amount. Upon the facts, and under the authorities referred to and relied on in the report and by the Orphans' Court, it cannot be said that the auditor was wrong in correcting the accounts stated by the appellant, and in surcharging him with the amount of interest he had included in those accounts.

4. In the appellant's statements, he credited forty per cent. of the interest account to the estate of the decedent. The appellees claimed that they had a right to fifty per cent., and this claim the auditor allowed. Sixty per cent. of the "interest account" was left undivided on the books. It was apparently conceded that all the partners had not the right to participate in this fund, but it was asserted that Mr. Garretson was entitled to take twenty per cent. of it. The rights of Garretson in the partnership, however, were settled by the second of the statements furnished to the auditor in June 1870, and all share of the interest fund was withheld. The report found: "It is not clear that any one was interested in the interest account but James W. and John H. Brown. In all the interest accounts settled prior to 1857, the interest was always equally divided between them, fifty per cent. to each, notwithstanding that Mr. Garretson was interested in the business as early as 1845." There is no apparent reason why the ruling of the auditor should be disturbed.

5. Two items made up the fifth surcharge: 1st. A claim included in the last of the appellant's statements presented on the 25th of November 1872, being the share of the estate of the loss suffered in conducting the business from the date of the decedent's death to the end of the year 1860, amounting to $4676.35; and 2d. A demand on behalf of the estate for its proportion of the interest on the value of the assets taken and used in the business subsequently to February 1860. Passing on these two items, the report declared: "After careful consideration of all the evidence, your auditor finds that there was a new business entered upon by the survivors in February 1860; but in his opinion it can make no difference whether there was a formally created new partnership and

new business, or whether there was such a continuance of the old business that John H. Brown, occupying the position he did, must be held to his legal responsibility. Certain it is that the capital and assets of the old firm were carried into and used by J. H. B. & Co., No. 3, new risks incurred, old risks changed, and losses made by the continuance." The legal rule is fixed on this subject. If the survivors of a partnership carry on the concern, and enter into new transactions with the partnership funds, they do so at their peril, and the representatives of the deceased may elect to call on them for the capital, with a share of the profits, or with interest. If no profits are made, or even if a loss is incurred, they must be charged with interest on the funds they use, and the whole loss will be theirs: 1 Parsons Cont. 202; Waring *v.* Cram, 1 Parsons Eq. Cont. 516; Parsons on Part. 443; and Beatty *v.* Wray, 7 Harris 516. In the last case, GIBSON, J., in commenting on Brown *v.* De Tastet, 1 Jacob 284, where a surviving partner was allowed for management, said: "Surely that case was not thoroughly considered. To involve the property of another in the chances of commerce, without his consent, cannot found a right; and Lord Eldon was gratuitously liberal when he allowed the delinquent survivor his expenses, who, if he might charge when the business had been prosperous, might charge when it had been ruinous. * * * In regard to that point, the English chancellors seem to have been guided by the hardships of the particular case, rather than by any fixed principle. In other respects, their decisions in cases of subsequent trading, have been remarkably stringent. The representatives of the dead partner have not only been allowed to elect between interest and the profits, but an inquiry has been directed to ascertain which would be most advantageous." A new firm was formed in January 1861, to which the appellant transferred his interest in the assets of the old partnership, and the interest of the decedent of course went with it. It was in the discussion of the two items of this surcharge, and in the final argument before the auditor, that the question of jurisdiction was for the first time raised. Twelve years had then passed. The other surviving partners had never intervened or complained. The subjects of controversy embraced no interests requiring an inquiry into the adjustment of the credits and assets of the partnership. They were merely questions between the appellant and James W. Brown's estate, and needed only the application of a process of addition and subtraction to final statements of accounts presented by the appellant himself. The auditor on these grounds held the objection to the jurisdiction to be unfounded; and upon the facts established, under rules of law applicable to such facts, he properly and justly surcharged the accountant with both the items that constituted this portion of the demand of the appellees.

Decree affirmed at appellant's costs, and appeal dismissed.