## APPEAL OF T. BURD ZELL ET AL., EXRS.

### [CLARK'S ADMRS. v. ZELL'S ADMRS.]

#### FROM THE DECREE OF THE COURT OF COMMON PLEAS OF BERKS COUNTY.

Argued March 4, 1889—Decided May 13, 1889.

(*a*) In 1855, Clark and Zell, partners in the lumber business, purchased an interest in certain real estate the title to which was in a trustee, who in 1859 sold the same, filed his account, and, after much delay and litigation, paid Clark & Zell's share of the proceeds to Clark, the liquidating partner of the firm, then dissolved.

(*b*) About 1878, after Clark's death, Zell united with other parties in various legal proceedings to recover the land, alleging that the sale referred to was fraudulent, which proceedings in 1882 were finally settled, Zell in his own name and as surviving partner of Clark & Zell uniting with the others in quit-claiming their interests in the land for $50,000 paid to them.

(*c*) In 1884, Clark's administrator filed a bill in equity praying that Zell be decreed to account for said $50,000, in which proceeding the master found that the interest of Clark & Zell in the lands was partnership property, that the interests of Clark's heirs therein passed by the quit-claim deed, and they were therefore entitled to share in the proceeds.

(*d*) The master further found that though the conduct of Clark's heirs had impeded Zell in his receipt of the money by the settlement of the litigation, yet Zell had lost nothing thereby and the heirs were therefore not estopped; and further that Zell was not entitled to compensation for his services as no agreement to pay therefor was proved.

1. The findings and conclusions of the master, in this case, were correct,

save that, as the claim to the land set up by Zell was unfounded and worthless and the recovery by the settlement was due solely to his persistent efforts, the plaintiffs having come into equity should do equity, and make him an equitable compensation.

2. While a partner, in the absence of an express contract, is not entitled to compensation for his personal services, though he has rendered more than his copartners, and while the decisions incline to extend this rule to services rendered in winding up the business after dissolution, yet, under the exceptional facts of this case, equity would decree compensation to the surviving partner for his services rendered in the subject matter for the benefit of the firm.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 304 January Term 1888, Sup. Ct.; court below, No. 351 Equity D. 1884, C. P.

On September 6, 1884, James B. Clark, administrator d. b. n. c. t. a. of John W. Clark, deceased, filed a bill in equity against Thomas Zell, charging that the defendant, as surviving partner of the firm of Clark & Zell, had received certain moneys of the said firm, praying for an account, etc. The defendant having filed an answer, issue was joined, and the cause was referred to *Mr. Henry A. Muhlenberg*, as examiner and master.

On April 23, 1885, the death of Thomas Zell was suggested and Josephine Zell, Thomas Burd Zell and William T. Zell, his executors, were substituted as defendants.

On December 3, 1886, upon findings of fact and conclusions of law stated in the syllabus but more fully appearing in the opinion of this court, the master recommended a decree that Josephine Zell, Thomas Burd Zell and William T. Zell, executors of Thomas Zell, deceased, pay to James B. Clark, administrator etc. of John W. Clark, deceased, the sum of $6,594, with interest from February 13, 1883, amounting to $8,532.64, and that said executors pay the costs of this proceeding.

Of numerous exceptions filed to the master's report by defendants one was as follows:

34. For that the master did not pass upon and allow the claim made before him by the defendants for compensation to Thomas Zell for services rendered in the collection of the money recovered by him, as it clearly appears from the correspondence put in evidence by the plaintiff, between him and

Mrs. E. C. Burton and John E. Young, that he was to receive compensation.

The exceptions were all dismissed by the court, ERMEN-TROUT, J., the master's report confirmed, and the decree recommended by the master signed and entered. Thereupon the defendants took this appeal assigning as error, the dismissal of their exceptions, the confirmation of the master's report, and the said decree.

*Mr. H. Willis Bland* and *Mr. Josiah Funck*, for the appellants.

*Mr. Jeff. Snyder* (with him *Mr. Geo. F. Baer*), for the appellee.

OPINION, MR. JUSTICE MITCHELL:

In 1855 Clark & Zell, who were partners in the lumber business, purchased an interest in certain tracts of land in Centre and Clearfield counties. The legal title was held by a trustee, who in 1859 sold the land, filed his account, and after much delay and litigation, paid Clark & Zell's share to Clark who was the liquidating partner of the firm, then dissolved.

About 1878, Zell and the heirs of Clark, who was then dead, alleging that the sale by the trustee was fraudulent, began various proceedings by ejectment and bills in equity to recover the land. As a result Zell received from Hon. William A. Wallace, in 1882, the sum of fifty thousand dollars in full settlement, and made a quit claim deed in his own name and as surviving partner of Clark & Zell. This bill was then filed by the heirs of Clark, for an account and payment of Clark's share of the money.

This is a very general outline of the numerous and complicated transactions, extending over a period of thirty years, that are more or less closely involved in the bill. The real pinch of the contest, however, turns upon two cardinal facts; first, whether the interest of Clark & Zell in the lands was partnership property, and secondly, whether Zell received the money as surviving partner, for the extinguishment of the joint interest in the lands. Zell denied both of these propositions, and defended on various other grounds including that of estoppel.

The learned master in the court below has relieved us from a large part of the burden which such a case would ordinarily impose, by a report which is a model of methodical arrangement, clear statement, and accurate application of the law. He finds first, that the interest of Clark & Zell was never an estate or interest in the lands themselves, but only in the proceeds, and therefore that it was not real estate but a chose in action; secondly, that it was purchased with partnership funds, and was partnership property; thirdly, that the deed of Zell in consideration for which he received the money, was executed as surviving partner, and by virtue of such execution passed all the interest of Clark's heirs in the land whatever it was, to Wallace, and therefore they were entitled to a share of the money; fourthly, that although Zell had been impeded and interfered with in getting the money, by the conduct and conflicting claims of the Clarks, yet he had in fact not lost anything or been induced or obliged to alter his position for the worse thereby, and therefore they were not estopped from claiming their share; fifthly, that such claim was properly asserted in equity, the bill being for discovery as well as account, and that even if this were more doubtful than it is, nevertheless the objection came too late after answer, and proceeding before the master for over nine months; sixthly, that the denials in the answer of respondent were overborne by the other testimony, which was ample to meet all the requirements of equity for that purpose; and lastly, that on settlement of the account, with allowance for counsel fees and expenses, there was due from respondent Zell to complainants the sum of six thousand five hundred and ninety-four dollars, with interest from February 13, 1883.

All these points are treated in detail, ably and accurately by the master, and we rest the case upon his report, without prolonged discussion here.

On a single point, however, we are constrained to differ with the master's conclusion, and that is the claim of the respondent Zell to an allowance for compensation for his services in securing the money.

It is due to the master to say that this claim was not brought to his attention till the close of the case, and even then was not much urged. It was hardly natural that it should be, so

long as counsel were strenuously contending against any liability at all. In a supplemental report, however, the master takes up the claim and dismisses it for want of proof of any agreement to pay for the services. Such proof of course, could not be furnished. Whether Young and Mrs. Burton had agreed to pay was irrelevant. So far as the Clarks are concerned, the whole evidence shows conclusively that no such agreement could have existed. On the contrary, so far from agreeing to pay Zell for what he was doing in their behalf as well as his own, they utterly repudiated his action and hindered and opposed it from beginning to end.

But the claim did not necessarily rest on an express agreement. The complainants came into equity to claim their share in the money Zell had succeeded in getting. In equity, as the master found, they were bound to reimburse him for their fair share of the expenses he had incurred in getting it. Why should they not also in equity reimburse him for his time, labor and judgment of which they now claim the fruits? As rightly found by the master neither Zell nor the Clarks ever had any title to the land. When the trustee sold, and Clark accepted the firm's share of the proceeds, which as liquidating partner he was then entitled to do, he extinguished all the interest of every kind that the firm had in the matter. The attack on the sale, nearly twenty years later, was apparently an afterthought born of the desire to get a part of the increase in value of the lands which was considerable. There is no evidence at all that the sale was fraudulent, and even if it had been, Clark appears to have had such knowledge of the matter as to estop himself from complaining, by taking part of the price. Whether this be so or not, is not entirely clear from what we have before us, nor is it material. We have enough in the case to show that the claim to the lands, made in the ejectment suits, was utterly unfounded and worthless. But by being actively pushed and made troublesome, it became of enough importance to be bought off by the holders of the real title. In this work of making the claim troublesome, Zell was the prime mover and active agent. On this point the master finds: "Indeed Mr. Zell is entitled to all credit for the energy and determination with which he carried on these proceedings, and finally brought them to a successful conclusion. The claim, even in the opinion and in the

very words of Judge RYON, was a stale claim. The plaintiffs in these equity and ejectment proceedings may have had no title at all," (as in fact we have seen they had none), "but by the exertions of Zell and his counsel, the cloud on the title to these lands became so thick and dense that Senator Wallace and those whom he represented were finally willing to remove it at a cost of fifty thousand dollars." The money that was paid was paid for peace, and Zell was the gadfly from whom peace was wanted. The Clarks hindered instead of · helping him, and now that they have turned around, and elected to come in under him and affirm his action they ought to pay him liberally. Whatever they get is just so much more than they had any real claim to, and just so much more than they would have got so long as they persisted in their own wrong-headed course. They get it at all because he had better judgment than they.

True, it is well settled that a partner in the absence of express contract, is not entitled to compensation for trouble or services, though he has worked beyond the others. Whether this rule extends to services rendered in winding up the business after dissolution, or in carrying it on after the death of one partner, is a much vexed question, as to which our own cases incline to the affirmative, and are rather opposed to the general current of authorities: See Lindley on Partnership, 5th ed., with Am. notes by Wentworth, p. *381, and cases there cited. But the facts in the present case are exceptional. The partnership had been dissolved more than twenty years; Clark, who was the liquidating partner, had apparently gathered in all the known available assets and had died. More than thirteen years after his death, Zell seems to have discovered this claim (or probably invented would be a more accurate term), and he prosecuted it for four years, with the energy and under the circumstances already related, to ultimate success. And now that the others come in and claim a share in the success they refused to help him in attaining, we think in equity they should make him a fair compensation for his services.

In arriving at a basis for the amount to be allowed, we may consider the action of the other parties as some evidence of the value of the services. The whole affair was speculative, and the compensation contingent on success. Young's share was the same as that of Clark and Zell, but both Young and Mrs.

Burton seem to have justly regarded their shares as so much clear gain, through the efforts of Zell, and accepted one thousand dollars each, in full. This gave Zell over five sixths of Young's net share, for his compensation. The counsel was paid for his professional services one fourth of the gross amount received, and this sum was much less than the fee originally promised him. We are of opinion that as to the Clarks, Zell's compensation should be between these two figures, and on consideration of the whole case, fix it at two thousand dollars.

This point also involves the consideration of the costs. Neither party's conduct to the other was entirely commendable. Zell refused to acknowledge any claim, and the plaintiff in his bill claimed twenty thousand dollars, one half of which the master found to be without any basis at all, and the other half of which was subject to the deductions for expenses as found by the master, and for compensation as determined by this opinion. The costs therefore ought not equitably to fall wholly on either party, and they are accordingly divided.

> The decree will be modified in accordance with the views herein expressed, and the record is remitted for that purpose.