# Eisenlohr's Estate (No. 1).

*Partnerships—Death of partner—Dissolution—Surviving partners' executors—Settlement of estate—Interest—Profits—Legatee's right to elect—Estoppel—Executors'. commission—Counsel fees—Equity—Accounting.*

1. One acting in a fiduciary capacity will not be permitted to derive a benefit from the investment of the trust fund under his control.

2. One who .while acting in a fiduciary capacity mixes with his own money the funds under his control, is liable either for interest thereon or the profits made by the fund in lieu of interest, at the option of the cestui que trust.

3. A surviving partner must account to the estate of his deceased partner for profits incident to the completion of existing contracts and the settling of the firm business, so long as the capital of deceased remains therein.

4. An agreement between three partners provided that upon the death of any one of them the partnership should determine as to him, but his share should be ascertained and at the option of the surviving partners should be paid by them to the legal representative of the deceased partner, or should remain as a loan to the surviving partners during the residue of the term of the partnership and for a certain period in addition thereto, to be secured to the legal representative of the deceased partner by the joint and several bonds of the remaining partners. One of the partners died leaving the survivors as his executors. He directed by will that his share of the partnership should be settled substantially as provided in the agreement. The executors gave no notice of an intention to accept and retain in their business the value of the decedent's share as a loan pursuant to the provisions of the will and the partnership agreement, but immediately entered the amount of the decedent's share on the books of the firm as a firm liability. The money was not withdrawn from the partnership but remained in the business and was carried as a liability on the books for six months after the deceased partner's death at which time it was paid by the checks of the firm to the order of the executors and placed in a separate account. Held, (1) there being no evidence of an election to treat the deceased's interest as a loan, the provisions of the partnership agreement and the will are not applicable, and (2) the fund having continued in the business, those interested in the

estate had the right to elect to take profits rather than interest on the fund.

5. In such case the fact that the widow of decedent insisted upon an examination of the books of the firm was no excuse for the delay on the part of the executors in paying into the estate the amount which they admitted to be due, and did not estop the widow from claiming that the estate was entitled to participate in the profits of the partnership.

6. Where in such case the estate had assets of the value of $140,-000 in addition to the amount invested in the partnership, but it did not appear that there was any particular difficulty or labor involved in the collection or distribution of such additional assets, the court below did not abuse its discretion in reducing the executors' commissions from $42,522.49, as claimed by them, to $5,000.

7. Where in such case a claim of $15,000 for counsel fee was made but it appeared that the greater part of the services rendered by counsel were in connection with partnership matters and were rendered chiefly in the interest of the surviving partners, the court did not abuse its discretion in reducing the counsel fee to $5,000.

8. Executors and administrators are not entitled to commissions upon the collection of money due from themselves to a decedent's estate.

Argued March 23, 1917. Appeal, No. 70, Jan. T., 1917, by Louis H. Eisenlohr and Charles J. Eisenlohr, from decree of O. C. Philadelphia Co., Jan. T., 1916, No. 85, dismissing appellants' exceptions and sustaining appellee's exceptions to adjudication, in Estate of Otto Eisenlohr, Deceased. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Exceptions to adjudication. Before ANDERSON, J.

The opinion of the Supreme Court states the facts.

The court dismissed exceptions filed by Louis H. Eisenlohr and Charles J. Eisenlohr and sustained exceptions filed by Josephine F. Eisenlohr. Louis H. Eisenlohr and Charles J. Eisenlohr appealed.

*Errors assigned* were in dismissing the exceptions.

*Joseph Gilfillan,* of *Graham & Gilfillan,* for appellants.

*Hampton L. Carson* and *Francis Shunk Brown,* for appellee.

OPINION BY MR. JUSTICE FRAZER, June 30, 1917:

The executors of Otto Eisenlohr have appealed from a decree of the Orphans' Court surcharging them with a share of the profits of a partnership accruing subsequent to Eisenlohr's death, and with a portion of credits taken by them for commissions and counsel fees.

In 1911, a partnership agreement was entered into between deceased and his two brothers, the appellants, which contained, inter alia, the following provisions: "In case any partner shall die or retire before the expiration of the partnership, the partnership shall thereupon determine as to him, and an account and statement shall thereupon be taken and made out of his share of the capital and effects of the partnership and of any unpaid interest and profits belonging to him up to the time of his retirement or decease, for which purpose a valuation shall be made of any assets or effects requiring valuation, and the amount so ascertained to be due and owing to the retiring or deceased partner shall, at the option of the remaining or surviving partners, be paid by them to him or to the legal representatives of the deceased partner, as the case may be, or, at the option of the said remaining or surviving partners, shall remain as a loan to the remaining or surviving partners during the residue of the term of said partnership and for a period in addition thereto which, with said residue, shall equal three full years from the retirement or death as aforesaid, bearing interest at the rate of six per cent. per annum, payable half yearly; and the repayment of the said loan at the end of the said period, together with interest thereon as aforesaid, shall be secured to the retiring partner or to the representatives of the deceased partner by the joint and several bond or covenant of the

remaining or surviving partners." Eisenlohr died December 19, 1914, leaving a will wherein, after making various specific devises and bequests, his residuary estate, including the partnership interest, was given to his brothers, Louis J. and Charles J. Eisenlohr, and his sister, Marie Eisenlohr, and his brothers appointed executors. With respect to his interest in the partnership he provided that "as soon as convenient after my decease an account and statement shall be taken and made out of my share in the capital and effects of the partnership of Otto Eisenlohr and Brothers, and of all unpaid interest and profits belonging to me up to the time of my decease, for which purpose I direct that a valuation shall be made of any assets or effects requiring valuation, and the amount so ascertained to be due and owing to me shall, at the option of my surviving partners or partner, remain as a loan to my surviving partners or partner for the period of not more than three years, bearing interest at the rate of six per cent. per annum, payable quarterly; and the repayment of said loan at the end of said period, together with interest thereon as aforesaid, shall be secured to my estate by the joint and several bond or covenant of the surviving partners or partner." The executors credited the estate of the deceased partner with the profits for the six months' period ending December 31, 1914, the books at that time showing the interest of deceased in the partnership to be valued at $1,302,409.66. They gave no notice of an intention to accept and retain this sum as a loan pursuant to the provisions of the will and the partnership agreement but immediately entered the amount on the books of the firm as a liability. The money was not withdrawn from the partnership but remained in the business and was carried as a liability on the books until July 30, 1915, at which time it was paid by checks of the firm, payable to the order of the executors, and placed in a separate bank account. In the meantime the profits of the business from January 1 to July 30, 1915, amounted to $281,139.15. The first

question raised by the assignments of error is whether
the estate was entitled to participate in these profits or
whether it should merely receive interest on the fund
during the time it remained on the books of the com-
pany as a liability.

The general rule is firmly established that one who,
while acting in a fiduciary capacity, mixes with his own
money the funds under his control, is liable either for in-
terest thereon or a share of the profits in lieu of interest,
at the option of the cestui que trust: Robinett's App.,
36 Pa. 174. This rule, as applied to partnership trans-
actions, requires the surviving partner to account to the
estate of the deceased partner for profits incident to the
completion of existing contracts and the settling of the
firm business, so long as the capital of deceased remains
therein: 30 Cyc. 640; and if the survivor carries on the
business for a longer time than necessary, for the pur-
pose of winding up the affairs of the firm, he may be
compelled to account to the estate of the deceased part-
ner for the share of the profits or to pay interest on the
capital used. In such case the surviving partner acts at
his risk and if no profits are made or if a loss results he
must bear the entire deficit and pay to the estate the
share to which it is entitled, together with interest:
Brown's App., 89 Pa. 139; Maloney's Est., 233 Pa. 614.
In the last case the surviving partner, as executor of
the deceased, made an appraisement of the latter's inter-
est in the partnership and did not separate the funds
from the business but continued, as before, keeping all
accounts in his individual name as a continuation of the
partnership business. The business was so conducted
for nine months, when he entered into a new partnership
with his son and charged himself as executor with the
inventory value of the interest of the deceased partner.
The survivor having carried on the business with the use
of the funds of deceased until the time of the creation of
the new firm, it was held the estate was entitled to share
in the profits up to that time. There the court below, in

an opinion approved by this court, said (page 618): "In so far as the accountant had not put the appraised value of decedent's interest in a separate account and kept it in his individual name with his own funds, it was, strictly speaking, commingled; but in view of the fact that he did not use this fund, or any part of it, in the business of the new firm after June 1, 1909, that he charged himself with it, held it for the benefit of this estate, and accounts for it, as of the time of the appraisement, no basis is furnished for the claim that, after death had dissolved the partnership, after the accountant is made to settle for profits up to the termination of the single contract, constituting this entire partnership business, he is further bound to account for profits made by the new partnership, on the new contract."

In the present case, although an appraisement of the interest of the deceased was made as of December 31, 1915, there was no actual separation of the partnership fund. On the contrary, the entire amount of decedent's interest, constituting substantially one-third of the capital of the firm, was carried as a firm liability and remained in the business, which thus secured the benefit of its use for the succeeding six months' period. Under these circumstances the law plainly imposes upon the surviving partners the duty of accounting for the profits accruing during the period, unless reasons warranting an exception to the general rule are shown to exist.

Appellants contend payment of the funds was prevented because of a dispute as to the correctness of the appraisement, and the desire of the widow to have an examination made of the books of the firm, which occupied several months, and in the meantime the setting aside of the interest of deceased was merely postponed until the dispute should be settled. The inquiry made by the widow was a natural one and within her legal rights; no valid reason appears however why her request should delay an earlier payment of the amount admitted by the executors to be due, nor was she estopped by her demand

from claiming profits made in the meantime from the continued use in the business of her deceased husband's interest. Such use was voluntary on the part of the executors and in no manner induced by the act of the widow, and had the money been lost they would not be permitted to excuse themselves from liability for the amount shown by the firm books to be due merely because of a claim for an additional sum. Having made a profit in the business of which the funds of the deceased partner remained a part by their voluntary act, there is nothing to prevent the application of the principle that one acting in a fiduciary capacity will not be permitted to derive a benefit from an investment of the trust fund. In this case the money remained in the partnership business, the firm received the benefits derived from its use and it is no answer to say the partnership was of sufficient financial ability to pay the amount at any time on demand. The fact remains they did not pay but allowed the fund to continue in the business; accordingly those interested in the estate had the right to elect to take profits rather than interest on the fund.

Neither is there merit in the contention that appellants were relieved from the payment of profits by the provision in the will and in the partnership agreement conferring upon them the right, at their option, to retain the interest of the deceased partner for a period not exceeding three years, and hold such interest as a loan. There is no evidence of a claim on their part of an election to treat deceased's interest as a loan, consequently, the matter must be disposed of regardless of the provision referred to.

The next question raised refers to the action of the court in reducing commissions and allowance of counsel fees. The executors claimed commissions of three per cent. on the entire estate, consisting principally of deceased's interest in the partnership, the total commissions amounting to $42,532.49. In settling the partnership affairs, appellants acted, not as execu-

tors but as surviving partners, and were not entitled to compensation for such services (Beatty v. Wray, 19 Pa. 516; Brown v. McFarland's Exr., 41 Pa. 129; Gyger's App., 62 Pa. 73; Brown's App., 89 Pa. 139), unless there are special circumstances warranting compensation (Zell's App., 126 Pa. 329; McCullough v. Barr et al., 145 Pa. 459), which do not exist here. The sole duty of the executors, in so far as partnership assets were concerned, was to receive and pay over the value of deceased's interest, and, as that sum was due from themselves, they were not entitled to profit by its collection: Barhite's App., 126 Pa. 404; Hoffer's Est., 156 Pa. 473. The remaining part of the estate amounted approximately to $140,000 and we find no evidence indicating particular difficulty or that an unusual amount of labor was involved in its collection or distribution, hence we cannot say the court below abused its discretion in reducing the commissions to $5,000.

The same principles apply to the claim of $15,000 for counsel fees, reduced to $5,000 by the auditing judge. So far as appears from the record, the greater part of the services rendered by counsel was in connection with partnership matters and were rendered chiefly in the interest of the surviving partners, that is, to the executors as individuals, rather than in their official capacity, hence counsel should look to the executors individually and not expect reimbursement out of the estate further than for services rendered to the estate.

The judgment is affirmed.