# H. P. McCULLOUGH v. W. W. BARR ET AL.

APPEALS BY PLAINTIFF AND DEFENDANTS FROM THE COURT
OF COMMON PLEAS OF CLARION COUNTY.

Argued October 9, 1891—Decided November 9, 1891.

(*a*) McCullough and Graham, after having been partners in a store for
over twenty-three years, in equal shares, executed a sealed agreement
reciting that fact, and that, in addition to said store, several parcels of
real estate had been purchased out of the profits of said business, some
in the name of M. & G., others in the name of G. alone;

(*b*) And providing that all property of every nature and kind, held by
said G. (save his household furnishment), whether separately and indi-
vidually, or jointly with said M., and whether severally or in common
with others, was in fact owned by said M. and G. in equal shares or
interests, and said M. was entitled to one half thereof, and to an equal
share of all profits;

(*c*) It was further provided, that " in settling the affairs of said partner-
ship, said G. is entitled to receive, however, for services, a salary of
seven hundred and fifty dollars per year for attending to said business,
to be taken out before a division of profits is made. . . . . After de-
ducting this sum, the division is to be equal: "

1. Besides the technical consideration imported by the seal, there was
ample consideration for the agreement, in the plain admission of a
partnership between the parties and of the possession of the assets by
G.; as well as in the specific agreement upon the mode in which his
resulting duty to account and pay over should be performed.

2. The agreement was not limited in its application to the profits of the
store, and to properties and investments clearly made out of such profits;
but it embraced property of every nature and kind, real and personal,
including accounts, notes, and choses in action, held and owned at the
date of making the agreement.

(*d*) G. having died, his administrator, to a bill in equity for an account,
under the terms of the agreement, answered, denying on information
and belief that M. and G., at the date of the agreement, were joint own-
ers in all the transactions, business and property of the said G., save
and except the store, as alleged in the bill:

3. With the agreement made a part of the bill, it was not error, in viola-
tion of the rule as to responsive answers, to put upon the defendant,
notwithstanding his answer under oath, the burden of proving that
items of property (other than the store), held by G. at the date of the
agreement, should not be included in the account under the terms
thereof.

4. The provision in the agreement providing for the salary to G., entitled

him thereto for his services in attending to the partnership business in the past, not merely in making the settlement of the business; but he was not entitled to interest thereon, and under the circumstances of the case, the salary continued only to the date of the agreement.

5. The circumstances under which the business was left on the death of G., the surviving partner, being exceptional, and both parties being responsible for the condition of the business affairs, it was not error, contrary to the general rule as to compensation, to allow to the defendant administrator commissions from the joint estate.

Before PAXSON, C. J., STERRETT, CLARK, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

Nos. 135, 147 October Term 1891, Sup. Ct.; court below, No. 2 January Term 1886, C. P. in Eq.

On December 19, 1885, Patrick McCullough, for himself and as executor of the will of Patrick McCullough, deceased, filed a bill in equity against W. W. Barr, administrator of Patrick Graham, deceased, Caroline Graham and others, widow and heirs of said Patrick Graham, deceased, averring:

" 1. That about the year 1859, the above named Patrick Mc-Cullough and Patrick Graham jointly engaged in business in Clarion county, Pennsylvania, as partners in a general store, in the purchase and sale of real estate, and in the manufacture and sale of lumber; said business being carried on by P. Graham, sometimes in the firm name, sometimes in his own name, and at others jointly with some third person or persons, but in all such business and investments, said P. McCullough had a joint and equal interest with said P. Graham. The only matters excepted from such joint ownership and interest are mentioned in the article of agreement referred to in the second paragraph of this bill.

" 2. On the thirty-first day of May, A. D. 1882, the said partners executed a written agreement, declarative of said partnership relation, a copy of which agreement is hereto annexed as exhibit A, and made part of this bill.

" 3. By two several deeds, the first dated May 6, 1880, from Grinfill Blake and wife to Elias Ritts, Patrick Graham, and R. L. Buzard, recorded in Clarion county deed book, . . . . and the other dated January 12, 1883, from Samuel C. Smith and wife, and Edwin R. Chadbourne and wife to James Campbell, Elias Ritts, P. Graham and R. L. Buzard, recorded in deed

Statement of Facts.

book, . . . . the legal title to the undivided one sixth part of twenty-seven hundred and fifty-four acres, more or less, of land, situate in Farmington and Highland townships, in said county of Clarion, was vested in said Patrick Graham, and he became jointly interested as partner with the other owners of said lands, in timbering and lumbering operations thereon.

"4. By the last will and testament of said P. McCullough, duly probated July 17, 1883, and registered in Allegheny county, Pennsylvania, in will book, . . . . and recorded in Clarion county deed book, . . . . all the interest of the said testator in the lands described in paragraph 3 of this bill, and the timbering and lumbering business thereon, was devised and bequeathed to your orator in his own right.

"5. In addition to the real estate mentioned in paragraph 3, the said P. Graham, under and by virtue of said partnership arrangement, purchased at various times and in various localities, other pieces of real estate, a complete description or list of which your orator is at present unable to set forth.

"6. Under and by virtue of the arrangement aforesaid, the said P. Graham carried on merchandizing, lumbering, and general dealing, for a number of years, and made large profits therein, and died on the fourth day of April, 1883, without having settled with or accounted to said P. McCullough, or your orator as his executor, for such profits, or the investments made therefrom.

"7. Letters of administration on the estate of said P. Graham, deceased, were duly granted to W. W. Barr, who took upon himself the burden of said trust; and said P. Graham has left surviving him a widow, Caroline Graham, and five children, namely : Joseph, Walter A., Augustine A., Francis P., and Agnes M., all minors, having for guardian Augustine Ditz.

"8. Wherefore, your orator needs equitable relief in the premises, and humbly prays :

" (1) That the said defendants may, by decree of this Honorable Court, be authorized and required to convey to your orator in his own right, as devisee of said P. McCullough, the undivided one twelfth part of the real estate mentioned and described in paragraph 3 of this bill, or so much thereof as has not heretofore been disposed of and conveyed by the joint owners of said real estate.

Statement of Facts.

" (2) That an account may be taken of all and every the said partnership, and other joint dealings and transactions, and that the said defendant, W. W. Barr, as administrator of P. Graham, deceased, may be directed to pay to your orator, as executor of P. McCullough, deceased, what, if anything, shall, upon such account, appear to be due from the estate of said P. Graham, deceased.

" (3) That the defendants may, by the decree of this court, be authorized and required to convey to your orator, as executor aforesaid, in trust for the residuary devisees and legatees of said Patrick McCullough, the undivided half of all or any pieces of real estate or interests in real estate, of which said Patrick Graham died seised, other than the real estate mentioned in paragraph 3, as aforesaid, and such real estate as by the terms of the article of agreement of May 31, 1882, aforesaid, was expressly excepted from the operation of said agreement."

EXHIBIT A.

" Whereas, Patrick Graham and Patrick McCullough, about the year 1859, became jointly interested (as equal partners) in a general country store, at Fryburg, Clarion county, Pennsylvania, under the name of McCullough & Graham, the business being carried on by said Graham : And whereas, in addition to said store, several tracts of land, town lots, and other real estate, have (out of the profits of said business) been purchased and improved, some in the name of McCullough & Graham, and others in that of P. Graham alone ;

" Now said parties hereby mutually acknowledge and agree : That all property of every nature and kind, in the state of Pennsylvania, held by said Graham (save his household furnishment), whether separately and individually, or jointly with said McCullough, and whether held severally or in common with others, is in fact owned in common by said P. Graham and said P. McCullough, in equal shares or interests ; and said McCullough is entitled to one half the income and proceeds thereof, and to an equal share of all profits. In settling the affairs of said partnership, said Graham is to receive, however, for services, a salary of seven hundred and fifty dollars per year for attending to said business, to be taken out before a division of the profits is made. After deducting this sum, the division is to be equal, neither party to make any claim for extra capi-

tal contributed in any way, but the entire property to be considered as owned in common, in equal shares.

"Witness, our hands and seals, this 31st day of May A. D. 1882.

"PATRICK GRAHAM,          [SEAL.]

"PATRICK McCULLOUGH, [SEAL.] "

"Witness :

"H. P. McCULLOUGH,

"JOHN GRAHAM."

"It is understood that P. Graham's dwelling house and lot in Fryburg, Pa., deeded to him by Ferdinand Ditz, is not included in the within; and also that P. Graham's individual accounts on the books of the firm, are not to be counted in the settlement of the partnership business; and that while Jacob Fasenmyer gets half of the profits for running the store, P. McCullough and P. Graham shall share alike in the other half, and P. Graham's wages go on as usual, the firm having the benefit of his time in other engagements.

"Witness our hands and seals this 31st day of May, A. D. 1882.

"PATRICK GRAHAM,          [SEAL.]

"PATRICK McCULLOUGH, [SEAL.] "

"Witness :

"H. P. McCULLOUGH,

"JOHN GRAHAM."

On January 18, 1883, the defendants filed an answer, in which the averments of fact of the bill were admitted as substantially correct, but as to the profits made, or that said P. Graham had not accounted to said P. McCullough, or his executors, the defendants were not able to answer, as it would require 'an account stated to ascertain the same; and defendants denied the right to a decree as prayed for until an account was stated, praying that a master be appointed to state an account. Thereupon, the court appointed *Mr. Samuel K. Clarke,* as master.

On April 1, 1886, the parties by counsel appeared before the master, when the counsel for plaintiff moved that defendants be required to file an account according to equity rule No. 66, and an inventory of the real estate in which the parties were jointly interested under the agreement exhibit A. Counsel for defendants agreed that they would furnish the account and inventory as soon as they could be prepared; and on March 19,

1887, the defendant administrator filed an account of collections and disbursements by him up to the date of filing, and thereafter a hearing was had and testimony taken.

The master filed a report on September 15, 1887. To this report both parties filed exceptions. The exceptions having been argued, the court, WILSON, P. J., on January 9, 1888, filed an opinion and decree re-committing the report to the master, with instructions to re-state an account and to submit a decree in accordance with the opinion. Additional testimony was taken, and on June 21, 1889, the master filed a second report. To this report, also, both parties filed exceptions. These exceptions having been argued, the court, WILSON, P. J., on August 12, 1889, filed an opinion, and entered a decree dismissing all the exceptions, save one filed by the plaintiff, and ordering the defendant administrator to pay to the plaintiff the sum of $9,106.36; a decree thereafter to be made as to the remaining assets.

On November 11, 1889, the defendants presented to the court their petition praying, upon the grounds therein averred, that the court would grant a re-hearing, that they might be allowed to amend their answer and to make proof of the averments of the petition, to the end that a true interpretation of the agreement of May 31, 1882, might be made, and an account stated according to the true intent and understanding of the parties. The prayers of the petition for a re-hearing and for leave to file an amended answer were granted; and on January 20, 1890, an amended answer was filed, the most material averments thereof being as follows:

" 1. That we believe the facts are truly stated in the first paragraph of the plaintiff's bill, so far as they relate to P. McCullough and P. Graham becoming partners in a general store at Fryburg in 1859, but the remaining allegations of this paragraph are denied, on information and belief, and proof of the same is required. We positively deny that the said P. McCullough become the joint owner in all the transactions and business of the said P. Graham, and we are informed and believe that the said P. McCullough in his lifetime did not claim or pretend to have any interest in any business of the said P. Graham, save and except the store at Fryburg.

" 2. We admit that we believe that P. Graham executed the

declarative agreement of May 31, 1882, as stated in plaintiff's second paragraph, but deny that it is declarative of such partnership relation as alleged in the first paragraph of plaintiff's bill, and being an after agreement, a gift, and without consideration, the same is void as a contract; but, if of any binding force or effect, it relates only to property, and would not pass any legal right to accounts, notes, judgments and money, or any other chose in action.

" 3. We also admit as true, as stated in plaintiff's fifth paragraph, that the said P. Graham died possessed of other valuable real estate or property besides that mentioned in the third paragraph of plaintiff's bill, as well as that mentioned in said paragraph, all of which was held in the name of P. Graham ; and we deny that the said P. McCullough had any interest in the same, (the said agreement of May 31, 1882, by its preamble, relates only to property acquired or purchased out of the profits of the said store at Fryburg;) and we deny that the same was purchased by or through any arrangement with Mr. P. McCullough, or with funds of said firm, or under and by virtue of any partnership arrangement with said McCullough ; and we are informed and believe, that very little, if any money of the said firm was used in their acquisition, but that the same is or was the separate and individual property of the said P. Graham."

This amended answer was signed by all the defendants, and verified by the affidavit of W. W. Barr, in the usual form of the verification of bills and answers in equity.

Further testimony having been taken, the master on June 4, 1890, filed a third report, in which, as to the construction of the agreement of May 31, 1882, citing: Case v. Cushman, 3 W. & S. 546 ; McLarren v. Robertson, 20 Pa. 125; Edelman v. Yeakel, 27 Pa. 26; Codding v. Wood, 112 Pa. 377; Vahn v. Porter, 16 Vt. 266; Baxter v. State, 9 Wis. 38–45 ; 1 Greenl. Ev., § 277 ; Stub v. Stub, 3 Pa. 254; and upon the allowance of the defendant administrator's commissions: Zell's App., 126 Pa. 329, the master found that from the balance of cash assets, shown by the account stated, there was due from the defendants to the plaintiff the sum of $7,231.28; that of some uncollected accounts, notes and judgments, most of them believed to be worthless, plaintiff was entitled to an assignment

of one half thereof, or to one half of any money that might be realized on them; that the real estate undisposed of was the store-house and lot in Fryburg, one half interest in sixty acres known as the Weaver Farm, and one half interest in one hundred and sixty acres known as the Riley land; and that plaintiff was entitled to a conveyance of one half the Fryburg lot, and one fourth the other lands, or to a like interest in the lands when sold.    He therefore recommended a decree accordingly.

To this report of the master, the plaintiff filed six exceptions, alleging, inter alia, that the master erred:

4. In allowing defendants a credit of $17,437.50 salary of P. Graham; neither he nor his representatives having made or offered to make any settlement of the partnership affairs, on which settlement only was said allowance to be made for salary.[1]

6. In allowing W. W. Barr commissions on the assets collected by him as administrator of the surviving partner of the firm of McCullough & Graham.[2]

To the same report, the defendants filed twenty-three exceptions, alleging, inter alia, that the master erred:

2. In finding as matter of law and fact that the defendants' answer was not within the rule of law requiring the testimony of two witnesses, or the equivalent thereof, to overcome the denials in the same.[a]

6. In not finding as matter of law that, under the pleadings in this case, the burden was upon the plaintiff to show by competent testimony that the individual business enterprises and transactions of P. Graham were on firm account, before the defendants could be charged with the property, accounts, notes, judgments, money and other choses in action acquired in the same by the said P. Graham and held in his individual name.[c]

17. In not allowing P. Graham's salary for the full term of twenty-four years as claimed by defendants, or up to the time of the death of the said P. Graham, to which date he continued the business, and accounted for the profits.[j]

18. In not allowing interest on said salary from and after the end of each year as the same became due and payable.[k]

23. In not finding as a fact that at the date of said agreement, the said P. Graham had in his hands the sum of $3,800

Opinion of the Court.

belonging to the estate of the minor children of J. S. Buzard for whom he was guardian, and also $3,100 belonging to Clarion county, received by him as county treasurer; and after said date, he received for the estate of C. Groner, for whom he he was also guardian, $7,400 after deducting the Murphy note, leaving $5,400; aggregating the sum of $12,300, which said defendant as administrator was compelled to pay to said several parties, and that the same was charged to the individual estate of P. Graham, while said funds went to the firm assets or into the general fund.o

—Said exceptions having been overruled by the master and afterwards argued, the court, WILSON, P. J., on April 13, 1891, filed an opinion dismissing all the exceptions, and entered a decree ordering the defendant administrator to pay to the plaintiff the sum of $7,231.28, the remaining property to be disposed of by a future decree, or as the master recommends.

Thereupon, the plaintiff took the appeal to No. 135, specifying for error, inter alia, the dismissal of the plaintiff's exceptions.[1] [2]

And the defendants took the appeal to No. 147, specifying for error, inter alia, the dismissal of the defendants' exceptions.[a to o]

*Mr. James Bredin* and *Mr. B. J. Reid* (with him *Mr. F. J. Maffett*), for the plaintiff, appellant and appellee.

*Mr. John W. Reed* (with him *Mr. W. A. Hindman* and *Mr. Harry R. Wilson*), for the defendants, appellants and appellees.

OPINION, MR. JUSTICE MITCHELL:

These are appeals by complainant and respondents, respectively, from the same decree, and will be considered together. In the course of the litigation the learned court below delivered three opinions; and as the last, accompanying the final decree, confirms the master's report, and dismisses all exceptions, without detailed examination, it will be most convenient to refer directly to the master's report, rather than to the opinion of the court.

The rights of the parties must be determined by the agreement of May 31, 1882. By this it appears that Graham and

McCullough had been in partnership from about April, 1859, in a general country store, and in land purchases, lumber operations, and other ventures, apparently without any settlement for more than twenty-three years. McCullough, being sick and approaching his death, desired an account and settlement, and the agreement in question was prepared and executed as such. The learned master well says that " the agreement shows that the parties recognized the impossibility of stating an account, and intended that there should be no attempt at raking over what was past. Instead of a statement or settlement of accounts, they agreed that, as a short cut to what they were both satisfied was just to each, everything was to be taken as owned jointly, and the proceeds and profits of what then existed as the result of their years of business should be equally divided." This is a concise and accurate summary of the substance of the agreement. Its legal character is that of an executed and binding contract. It is objected by the defendants that it was without consideration, or at most a promise upon a consideration wholly past and insufficient to support a decree of performance. But, passing over the technical consideration imported by the seal, there is a plain admission of a partnership, of the possession of the assets by Graham, and a specific agreement upon the mode in which his resulting duty to account and pay over shall be performed. The surrender of mutual rights to a detailed accounting was ample consideration.

Upon the construction of the agreement defendants contend, and this is the stress of the case, that it must be limited in its application to the profits of the store at Fryburg, and properties or investments clearly made out of such profits. The preamble recites the partnership in the store, and, further, that several tracts of land, etc., " have out of the profits of said business, been purchased ; " and it might be natural to expect that the agreement to follow would be confined to the subject matter thus recited as introductory. But in fact it is not. Such a sense might readily be given to it, as defendants suggest, by the word " said " introduced before the agreement, " that all [said] property, of every nature and kind," etc. But the parties have not used that word. The principle of law contended for by the defendants is unquestionable, that, however general the terms of a contract, it shall be held to

apply only to the things which the parties had in contemplation, and about which their intention was to contract; and their intention may be ascertained from the situation and circumstances, including the recitals and preamble of the contract itself. No rule of construction is more valuable, but it is equally well settled that the insertion of a word which materially changes the meaning of a contract, is only justified on the clearest evidence that it was in contemplation of the parties, and was omitted by accident or mistake. There is no such evidence in the present case. The most that can be said is that the parties might have meant to so limit their agreement, but they have not done so. What they have said is that "all property of every nature and kind in the state of Pennsylvania, held by said Graham, save his household furnishment, whether separately and individually or jointly, . . . . is in fact owned in common by said P. Graham and P. McCullough in equal shares," etc. It would be difficult to make language broader and more comprehensive than this; and that it was intentionally so made and understood is not only the natural conclusion from the words used, but is rendered additionally probable by the exception of Graham's "household furnishment," which the parties understood would otherwise be included; and still more by the further express exceptions in the second portion of the paper, which, though of the same date as the first, seems to have been the result of after-thought or further consideration, apparently on this very subject of the extreme comprehensiveness of the terms in which the joint possessions are described. To quote again, with slight modification, from the convincing report of the learned master: "The language is too broad and positive to be controlled by the preamble. The parties knew that the various moneys that went into the purchase of these lands could not be traced; and, as a result of their deliberations, they agreed and declared, in language unmistakable in clearness, that it should all be taken to be firm property."

The same considerations, which need not be repeated in detail, answer the further contention that the word property, in the agreement, did not include accounts, notes, and choses in action, but was limited to tangible property, if not to real estate.

We are therefore of opinion, with the learned master, that

the true construction and scope of the agreement are that it "requires that there shall be ascertained what property, of every nature and kind, real and personal, was held and owned at the date of the making of the agreement, and division made thereof, or of the proceeds thereof, in equal shares between the parties, first deducting payments made by Graham's representatives, for debts of the firm, proper expenses," etc. And, the fact of the holding of any item of property at the date of the agreement being established, the master was also right in adopting the presumption that such item should be included in the account, unless shown for special reasons to be outside of the agreement; while, on the other hand, as to items merely shown to be in Graham's hands after the date of the agreement, the burden of proof would be on the plaintiff to show that they were part of the property intended to be included. In thus assigning the burden of proof to the one party or the other according to the circumstances, there was no violation of the equity rule that requires the evidence of two witnesses to overcome an answer responsive to the bill. The argument to this effect overlooks the force of the admission by Graham in the agreement. It is not the rule in equity, any more than in law, that a plain acknowledgment in writing, by a decedent, of an existing debt, will be overcome by an answer of his executor, "to the best of his knowledge and belief," that no such debt was owing. Relief in equity is of grace, and is only given where the right to it is clearly made out. Hence, if the facts out of which the right grows are denied by respondent under oath, there must be more than the complainant's oath to overcome it. This is the substance of the rule; and it is not to be so fettered by technical limitations as to impair its real meaning, especially since parties have been made competent witnesses, and their testimony thus put on an equality, not only as to each other, but as to other evidence. If it is oath against oath, at law the jury must decide between them; and for myself I see no good reason why, in equity, the chancellor should not do the same thing, keeping in mind always that relief is of grace, and the right to it must be clear. As in a criminal prosecution, though not for the same reasons, it is sufficient for the defendant to raise a reasonable doubt.

These main principles governing the controversy having been

ably and correctly decided by the learned master, it remains only to consider such applications of them, assigned for error, as are not sufficiently covered by what has been already said.

The master allowed Graham's salary up to the date of the agreement, but held that it terminated then. Complainant excepts to the allowance, because, as he contends, the salary was only to be payable on the settlement of the partnership affairs, which Graham did not make. This view, however, is not tenable. The language of the agreement is, " In settling the affairs of said partnership, said Graham is to receive, however, for services, a salary of seven hundred and fifty dollars a year for attending to said business, to be taken out before a division," etc. This clearly means for attending to the business in the past, not for making the settlement; and the expression " in settling the affairs" is equivalent to " when the affairs are settled." On the other hand, the respondent excepts because the master refused to allow interest on the salary, and also because he held that it did not continue after the date of the agreement. Interest was clearly not intended by the parties. As already quoted, their language is, " In settling, . . . . Graham is to receive (i. e., to be credited with) a salary of seven hundred and fifty dollars per year;" that is, at the rate of seven hundred and fifty dollars a year; and " after deducting *this sum*, the division is to be equal," etc. It was plainly regarded as one entire sum, not due from year to year previously, but agreed upon at the time as a proper allowance, on, but not before the final settlement. With regard to the continuance of the salary after the agreement, there is room for doubt whether the paper was meant as a dissolution of the partnership, or a mere settlement to date. If it were necessary to decide that question, we should incline, notwithstanding some difficulties, to the former view. But the death of McCullough only a few weeks later makes this question unimportant. By that event, if not before, the partnership was certainly dissolved; and thereafter Graham was a surviving partner, with the duty to wind up the business and settle the account. It does not appear just what he did towards this end, but it is undisputed that the business was not settled, nor the accounting done, until after his death, by his administrator. Under these circumstances, we cannot say that the learned master was in error in holding that the right to salary ceased at the date of the agreement.

Opinion of the Court.

The master allowed the defendant Barr commissions on the assets which he collected as administrator of Graham, and to this plaintiff excepted.  It would seem to be settled in this state, contrary to the general rule, that a surviving partner is not entitled to compensation for winding up the business: Beatty v. Wray, 19 Pa. 516; Brown v. McFarland, 41 Pa. 129; Gyger's App., 62 Pa. 73; Brown's App., 89 Pa. 139.  Whether the rule extends to his representative after his death, does not appear to have been considered, nor is it necessary to do so now. Graham died before making the settlement; and, as found by the master, the circumstances in which he left the business were exceptional.  The basis of it was a country store, carried on most of the time in his individual name, with no cash account kept, nor any books from which the profit or loss could be ascertained; and from this original business branched out land and lumber operations, by himself and with others, involving large amounts.  At the end of twenty-three years, all this was agreed and declared a partnership matter, and within another year both partners died, and the administrator was called upon to unravel this long and tangled skein.  For the condition of affairs both partners were partially responsible; and the master was right in holding that under the circumstances the defendant was entitled to commissions from the joint estate.

Defendants' last assignment, to the refusal of credit for certain moneys claimed to be trust funds, would be well taken if supported by the facts.  Notwithstanding the extreme generality and conprehensiveness of the language of the agreement as to all the property, of every nature and kind, held by Graham, it cannot be taken to include the moneys or property of others held by him in trust.  And so the learned master held; for he deducted, $9,040.26, as trust funds, from the gross collections, and reported that " none of the money or notes (other than the $9,040.26) has been identified as trust moneys."  The contention cannot be sustained.

The other assignments of error, on both sides, are sufficiently treated in the general discussion of the contract, or are to findings of fact as to which no errors by the master and court have been made clear to us.

> Both appeals are dismissed, at the costs of the respective appellants, and the decree affirmed.