## Maloney's Estate.

*Executors and administrators—Partnership between executor and testator—Accounting for profits.*

Where an executor, who was the partner of his testator, has the deceased partner's interest in the partnership appraised, but does not immediately sell it, and then continues the business until the expiration of the contract which was the firm's only business, when he sells the decedent's interest to his own son, and thereafter enters into a new partnership with his son to carry on a new business under an entirely new contract, and none of the estate's money is used in the new business, the executor will be charged with a share of the profits to the deceased's estate up to the formation of the new partnership, but will not be liable for any profits to the estate thereafter.

Argued Oct. 16, 1911. Appeal, No. 22, Oct. T., 1911, by The Fidelity Title & Trust Company, Guardian of John J., Edward D., Anne V., and Agnes C. Maloney, Minors, from decree of O. C. Allegheny Co., Jan. T., 1910,

No. 112, dismissing exceptions to adjudication in Estate of John Maloney, deceased. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Exceptions to adjudication.

MILLER, J., filed the following opinion:

The principal question is whether the accountant, who was also the surviving partner of the decedent, should be surcharged with the profits arising out of the partnership business, which he continued to conduct without a distinct settlement of the partnership business, and if so, for what length of time.

At the decedent's death, October 28, 1908, he was a half partner with the accountant, whom he made his executor, in the business of selling coke, under the firm name of T. D. Maloney & Company.

This business was based entirely on a subcontract the partners had with one who had an original contract from the Philadelphia Gas Company. Their place of business was on the property of said gas company, the use of which was a right incidental and necessary to the coke contract.

The contract existing at the time of decedent's death, expired by limitation on June 1, 1909, having run some four or five years before. After the decedent's death the accountant changed the name of the firm, striking out "and company," and leaving the business in his own name. He so carried the bank accounts and transacted the business until after June 1, 1909, when he took in his son as a partner, obtained a new contract similar to the former one, and operated the business under the firm name of T. D. Maloney & Son.

He did not close the partnership account after the death of John Maloney, nor did he as surviving partner settle the partnership affairs. After he took his son into partnership, he transferred to him the interest of the decedent for $2,000, taking his son's note; this interest the son has

been, and is paying out of his share of the profits of the business. Under date of July 2, 1909, he caused an appraisement to be filed in the register's office of the estate of decedent which came into his hands, wherein it appears that the decedent's half in the firm of T. D. Maloney & Company was appraised as to capital in the sum of $2,000, and as to other assets consisting of horses, wagons and other general partnership assets, at $412.05. He mingled the assets of this partnership business after the death of his partner with his own, keeping all bank accounts in his own name. For a part of the funds which he collected and charged himself, it is admitted that interest should be added at the same rate that he was receiving interest from the banks, to wit, three per cent.

It was the custom of the partners to make quarterly settlements between themselves and divide or charge off their net profits; this last settlement was made as of October 1, 1908, and John Maloney received his share of the profits to that time.

The net profits made by the accountant after the death of the decedent are as follows:

For the months of October, November and December, 1908, . . . . . . $1,500.05
For the months of January, February and March, 1909, . . . . . . 1,423.25
For the months of April, May and June, 1909, being the termination of the contract existing at the time of the death of John Maloney, . . . . . . . . 2,249.09

A total of . . . . . $5,172.39

After June, 1909, under the new contract made when he took in his son as a partner, and charged himself with the inventory value of the half interest of John Maloney, the profits to April 1, 1910, are admitted to be $13,183.23.

If the accountant, as surviving partner, had followed the usual and prescribed course, he would have duly

settled the partnership as between himself, the surviving partner, and as the executor of the deceased partner: Williams' Est., 23 Pitts. Leg. J. 118.

In such settlement, conceding that the death of John Maloney dissolved the partnership, yet it was the duty of the surviving partner to obtain the fullest benefit and advantage of all decedent's contracts, which were a part of the assets of the partnership; he would not have been justified in treating the unexpired contract, the sole assets of this partnership, as of no value to anyone but himself.

Having failed to adjust the partnership as surviving partner, having seen fit to conduct the business of the partnership with the partnership assets, and not having caused either the settlement of the partnership, nor an appraisement of the partnership, of the deceased partner's interest to be made and filed until July of 1909, the conduct of the business by him in this manner, during this period, must in equity be treated as a partnership business, and the estate has a right to elect, sharing in the profits during the period rather than demanding interest on the capital of the deceased partner. Accountant will be surcharged with one-half of the admitted profits under the old contract, viz.: $5,172.39, and with interest thereon from July 1, 1909.

During the period from decedent's death until the termination of the contract, the survivor carried on the business practically with the partnership funds and is accountable to the estate of the deceased partner for a share of the profits: Brown's App., 89 Pa. 139.

The appraisement of the decedent's interest in the partnership, and the transfer thereof to his son at the appraised price, must be treated as a termination of the accountant's liability as surviving partner; the new partnership began an entirely new contract; it is immaterial that it was made between the same parties, or that its terms are similar to the old contract; as a fact it was not a part of the old partnership assets; therefore the estate is

not entitled to a share in the profits after June, 1909, made by the new firm, under the new contract.

On exception to the adjudication, MILLER, J., filed the following opinion:

In so far as the accountant had not put the appraised value of decedent's interest in a separate account and kept it in his individual name with his own funds, it was, strictly speaking, commingled; but in view of the fact that he did not use this fund, or any part of it, in the business of the new firm after June 1, 1909, that he charged himself with it; held it for the benefit of this estate, and accounts for it, as of the time of the appraisement, no basis is furnished for the claim, that after death had dissolved the partnership, after the accountant is made to settle for profits up to the termination of the single contract, constituting this entire partnership business, he is further bound to account for profits made by the new partnership, on the new contract.

It is immaterial on what terms or to whom he sold the deceased partner's interest, if in the absence of fraud he obtained full value therefor; charging himself with the amount thereof relieves the estate of concern as to how he will be paid, whether he is paid at all, or whom he sees fit to take into partnership.

In Brown's App., 89 Pa. 139, there was a general partnership business, continued by the representatives of the deceased partner for many years, with a distinct use of the partnership funds during that period. The facts here show a partnership limited to one thing, dealing with one customer under a distinct contract that expired at a specified time, and the funds of the estate were not used by the new partnership.

The new contract afterwards made by the accountant had no connection with the dissolved partnership; it was not a continuance of the former partnership business with partnership funds; no right of renewal on the coke contract is shown. either in the estate, or in the surviving

partner, after June 1, 1909. Certainly the law does not compel or require accountants of decedents' estates, in the absence of testamentary authority, to embark in new business ventures with trust funds.

Nor is this the case of a tenant's right in a renewal of a lease as an asset incident to an existing lease: Johnson's App., 115 Pa. 129. Even conceding that the expectancy of renewal was an asset, and that it was accountant's duty to renew, Johnson's App., 115 Pa. 129, the exceptants furnished no evidence of the value of this expectancy in the nature of good will, or otherwise. It is not apparent that the profits made by the new partnership, under the new contract, are any evidence of the value of the expectancy of renewal.

The exceptions must therefore be dismissed.

*Error assigned* was in dismissing exceptions to adjudication.

*William A. Jordan*, with him *Thos. D. Chantler* and *W. H. McClung*, for appellants.—If the survivor of a partnership carries on the concern and enters into new transactions with the partnership funds, he does so at his peril, and is accountable to the estate of the deceased partner for the capital, with a share of the profits, or with interest: De Haven's App., 34 Pitts. Leg. J. 211; Hermes v. Hermes, 36 Pitts. Leg. J. 265; Heager's Est., 15 S. & R. 65; Johnson's App., 115 Pa. 129.

The chance or opportunity of renewal of the old contract is, in itself, a distinct asset: Johnson's App., 115 Pa. 129; Mueller's Est., 190 Pa. 601; Brady's Est., 21 Pa. Superior Ct. 397; Graeser's Est., 230 Pa. 145; Heager's Est., 15 S. & R. 65; Brown's App., 89 Pa. 139; Lindsay's Est., 210 Pa. 224; Harbster's App., 125 Pa. 1.

*W. B. Rodgers*, with him *D. C. Reardon*, for appellee.

PER CURIAM, January 2, 1912:

The decree of the orphans' court is affirmed for the reasons stated in the opinion of Judge MILLER.