## Book's Estate.

Argued May 22, 1929. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

*Wylie McCaslin*, for appellant.—The parents of the child by their written contract gave up a natural and lawful right. They have now, by retaining possession and control of the child, acquired all the rights which they thus gave up, and are in a position of having given nothing in return for the obligations which the guardian of the child now seeks to enforce.

The contract is impossible of performance: Com. v. King, 4 S. & R. 109; Billing's App., 106 Pa. 558; Schrum's Est., 90 Pa. Superior Ct. 554.

All contracts must be construed with reference to their subject-matter and a contract defining an existing relation can have no operation when that relation ceases, for its foundation is gone: Bland v. Umstead, 23 Pa. 316; Grim v. Iron Co., 115 Pa. 611; Landes v. Eastern E. & M. Co., 12 Pa. Dist. R. 625.

*William McElwee, Jr.*, for appellee.—It is not unlawful to make a contract of this kind binding on the estate of the person bound by it.

Power to invalidate agreements on ground of public policy should be used, only where a dangerous tendency

clearly and unequivocally appears from contract itself: Enders v. Enders, 164 Pa. 266; Hoop v. Anderson, 20 W. N. C. 348; Brewing Co. v. Booth, 162 Pa. 100.

This contract neither relieves either of the parents from any of their obligations and responsibilities to this child nor attempts to oust the jurisdiction of the courts to determine what would be for the best interests of the child. It therefore is not against public policy as attempting to do either of these things: Manning v. Manning, 89 Pa. Superior Ct. 301.

The child has a cause of action which her guardian may enforce: Blymire v. Boistle,.6 Watts 182; School Dist. v. Gas Co., 18 Pa. Superior Ct. 73; Brill v. Brill, 282 Pa. 276; Tasin v. Bastress, 284 Pa. 47.

It certainly is a novel proposition to say that because the brothers and sisters of the decedent will profit nothing by the fulfillment of the contract of the decedent, that therefore the consideration for the solemn obligation of the decedent has failed: McGinley's Est., 257 Pa. 478; Davies's Est., 289 Pa. 579; McLaughlin v. Collins, 138 Pa. 198; Perry v. Scott, 51 Pa. 119.

OPINION BY MR. JUSTICE KEPHART, September 30, 1929:

The preamble to the agreement between the parents of Eleanore J. McMillin, aged 22 months, and Maria J. Book, a widow, recited, that because of disagreements between the parents, Eleanore was not receiving proper care and maintenance, and that her aunt, Maria J. Book, "by reason of blood relationship and affection, and a desire for the company and companionship of Eleanore," desired to assume her "care, maintenance and educa-. tion." In the contract the parents agreed to "turn over and relinquish all their rights to the custody and control" of their daughter to her aunt, who was to have "absolute control and custody" of the child Eleanore; for so doing, Mrs. Book bound "herself, her heirs, executors, administrators and assigns to care for, maintain, pro-

vide for and educate" Eleanore "until she could reach legal age, in a manner suitable to the financial status" of her aunt. Shortly after the execution of the agreement and the delivery of the child into her possession, Mrs. Book became quite ill, and died within a few days. If the agreement is otherwise valid, the fact that she died shortly after its execution would be of no consequence: McGinley's Est., 257 Pa. 478.

The questions raised came before the court below in the distribution of a partial account of $52,000; the guardian for the child asked that a sum be set aside to be used to carry out the provisions of the contract. The guardian and the parents appeared before the auditor to press the claim in behalf of the child. It was resisted by certain legatees and heirs under the will of Mrs. Book, but the court below held the contract bound the estate, and directed the executors to set aside a sum sufficient to carry out the purposes of the agreement; from that order this appeal has been taken.

A contract, to be against public policy, must have a tendency to injure the public or to be against the public good, or must be inconsistent with good morals as to the consideration or the thing to be done. A contract, however, wherein a child is surrendered to an aunt, for custody, care, maintenance and education, because parents are in disagreement with each other to its detriment, or because of financial difficulties, is not against public policy: Enders v. Enders, 164 Pa. 266. Parents may apprentice children, or may permit their adoption. The result accomplished by the contract under consideration is in many respects similar to that attained by the latter process, which is wholly a statutory measure: Thompson's Adoption, 290 Pa. 586, 590; Ballard v. Ward, 89 Pa. 358.

What effect has the death on the contract? The elements stressed as attacking its validity as a continuing obligation are the personal attention by and the companionship with Mrs. Book, which necessarily ceased on

her demise; and so, according to appellant, worked an impossibility of performance that negatived the agreement. As personal attention is understood in law, Mrs. Book was not required to give it, nor did the personal relation with respect to attention form the basis of the contract. She was a woman of considerable means, in advanced years, amply able to furnish the necessary sustenance of care, maintenance and education for the little girl, without burdening herself with the actual work. While she wanted its companionship, love and affection, it is evident that the controlling factor was the child's welfare, not her own. Mrs. Book, under the ordinary rules of expectancy of life, would not live until the child reached legal age, but she made this contract to cover that period for the child's benefit, repeating at the end thereof that it should be binding on her estate. As well stated by the court below, "Her motive was the affection for the child, which sprang from blood relationship." She had in mind the employment of others in its care, maintenance and education, as a standard was fixed for that service, namely, in a manner suitable to the financial status of Maria J. Book, to which her estate stood bound. If her personal attention was intended, the sentence would be meaningless, as it was more than a mere assurance to parents; it was an engagement that contemplated employment of such services as her financial standing permitted until the child was of legal age. To adopt appellant's view would be to charge the aunt with a narrow, selfish purpose. The agreement reflects the contrary. While we grant that, during the child's tender years, Mrs. Book might have supplied a certain amount of motherly love and attention, the agreement was not based on that factor, but on "proper care and maintenance." A nurse, during its early years, would no doubt perform the service so that the ultimate purpose of the contract might not be defeated. "Where the agreement is for services which involve the peculiar skill of an expert, by whom alone the particular work in

contemplation of the parties can be performed, or, more generally, where distinctly personal considerations are at the foundation of the contract, the relation of the parties is dissolved by the death of him whose personal qualities constituted the particular inducement to the contract. But where a party agrees to do that which does not necessarily require him to perform in person, that which he may, by assignment of his contract or otherwise, employ others to do, we may fairly infer, unless otherwise expressed, that a mere personal relation was not contemplated": Billings's App., 106 Pa. 558, 560. If the agreement, in terms or by necessary implication, contemplated the personal attention of Mrs. Book as to care, education and maintenance, a different question would be before us: Young, Administratrix, v. Gongaware, 275 Pa. 285; Blakely v. Sousa (No. 1), 197 Pa. 305; Billings's App., supra; Dickinson v. Calahan's Administrators, 19 Pa. 227; Dixon v. Breon, 22 Pa. Superior Ct. 340.

On the question of companionship, she could not have engaged it after death, and, as is shown by the words of the agreement, she did intend to bind her heirs, executors and administrators to the fulfillment of the contract so as to prevent its ending at death. Companionship was completed at death; after that it could no longer be a feature in the agreement. Likewise, there was not a failure of consideration because the child in its turn could no longer perform its duties to the aunt. While parents are entitled to the services of their children, and it might be assumed that Mrs. Book would be entitled to them, this contract was not made on the basis of service. Nowhere in the agreement is any mention made of it.

There is no question about one fact, that Mrs. Book did have in mind moving the child away from any untoward influence of its parents and so contracted; since her death the one charged by the court below must see this result is accomplished. The matter is now in the

orphans' court and that tribunal can enforce proper decrees to that end.

The court below did not err in holding that the contract was not based on personal services of a nature peculiar to one of the contracting parties, and that the terms of the contract may be complied with, even though one of the contracting parties is dead, the contract itself having specifically called for such execution.

The remaining question is whether the guardian may enforce this contract, it being one for the enforcement of rights of a person not a party to the contract, or a so-called third-party contract. We have had occasion lately to go into this subject quite thoroughly: Greene Co. v. Southern Surety Co., 292 Pa. 304.

The American Law Institute, in the Restatement of the Law of Contracts, where the performance of a promise will benefit a person other than the promisee, subdivides such agreements into three classes. This contract would come under the second, that of creditor beneficiary, which arises, as defined, "If no purpose to make a gift appears......and the performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary." Here the contract is unconditional, not voidable, and is enforceable as of time of its formation; and we have found that death did not subsequently cause it to be invalid, either in whole or in part.

The Restatement notes that, generally speaking, a creditor beneficiary may sue, but, as stated in Greene Co. v. Southern Surety Co., supra, and further noted in the Pennsylvania Annotations to the Restatement of the Law of the American Law Institute, in the case of creditor and donee beneficiaries, the limit of liability in this State is the enforcement of a trust, or the transfer of property which is in the nature of a trust. But, as we said, in regard to Brill v. Brill, 282 Pa. 276, which may also be classed as a creditor beneficiary case, that contract was enforceable on the ground of public policy;

and the case before us does not differ very much from the situation there presented.

The parents of the child are responsible for its care, education and maintenance to the State, and while, so far as the State is concerned, they may not divorce themselves from such liability (Com. ex rel. Manning v. Manning, 89 Pa. Superior Ct. 301), still, where a contract is made, on sufficient consideration, with a third person for the care and maintenance of a child, the State has such an interest in its welfare that we may hold the contract enforceable at the suit of the guardian, as a matter of public policy. The position of the parents is on even higher ground as to its enforceability. There was a consideration of great value moving to them; for the child's future success in life, they surrendered its custody, control and all that goes with them. This is no small sacrifice for parents to make.

After careful consideration of the entire matter, we held that the court below did not err in directing the executors to provide a fund for the care, maintenance and education of this child. No question is raised as to the fund's adequacy and the court below will no doubt correct any error in allowance in a future account. The guardian's request was very reasonable.

Decree affirmed at appellant's cost.