King Estate.

Argued January 10, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

28

*Ella Graubart*, with her *Emanuel L. Leopold, Scheeline & Leopold,* and *Patterson, Crawford, Arensberg & Dunn,* for life tenant, appellant No. 64 and appellee No. 87.

*Thomas N. Griggs,* of *Griggs & Moreland,* with him *Wm. D. Evans,* for trustee, appellant No. 87, appellee No. 64.

*Howard Zacharias,* guardian ad litem, in propria persona.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, March 20, 1944:

The question raised by these appeals relates to apportionment of corporate stock between life tenant and remaindermen. Its answer depends upon the effect of a corporate recapitalization and the merger by the corporation with two of its wholly owned corporate subsidiaries.

For the purpose of this opinion it will be unnecessary to recite the provisions of the testamentary trusts or the detailed facts and figures pertaining to the corporate recapitalization and merger. It is sufficient to state that one of the trusts is for the benefit of the widow of a deceased son, for her life, with remainder to her sons. The other trust is for the benefit of named grandsons, who are all living. The trustee is the same in both trusts. Each trust contained shares of common and preferred stock of a corporation. The preferred stock had arrearages for dividends undeclared. The corporation effected a recapitalization and merger with two of its wholly owned subsidiaries. The trustee exchanged each share of preferred stock, with accrued dividend arrearages, for one-half share of 5% cumulative preferred stock, Series A., one-half share of 5% cumulative convertible preferred stock, Series B., and one and one-quarter shares of no-par common stock; each share of $100. par

common stock was exchanged for one share of no-par common stock. The recapitalization and merger did not affect the capital nor increase or decrease the surplus. The assets and financial situation of the corporation remained unchanged. The trustee, owner of the stock, neither gained nor lost by the transaction. The same property interest was represented by the new certificates of stock that had been indicated by the old. There have been no stock dividends declared, no corporate dissolution, no distribution of corporate assets, and no sale of any of the new stock by the trustee.

Upon an audit of the trustee's account, the orphans' court allocated part of the new common stock to corpus and part to income. Both the life tenant and the trustee have appealed. The life tenant is dissatisfied with the number of shares awarded to her. The trustee objects to any allocation at this time. After careful examination of the record, we are required to reverse the action of the court below.

There is probably no more difficult and intricate branch of the law than the *application* of what is termed the Pennsylvania, or American, Rule of Apportionment. The principle of equitable apportionment was early established (see *Earp's Appeal,* 28 Pa. 368), and its development and refinements are ably discussed by former Chief Justice KEPHART in *Nirdlinger's Estate,* 290 Pa. 457, 139 A. 200, and in *Waterhouse's Estate,* 308 Pa. 422, 162 A. 295. There is a host of other cases, which need not be cited, dealing with various applications of the principle. In general, it is the rule that on distribution a life tenant is entitled to receive accumulated profits and earnings, except where necessary to preserve the "intact value" of principal. Where there is a stock or cash dividend, a corporate liquidation, a sale or distribution in kind, the life tenant is entitled to such accumulated profits and earnings. It is wholly immaterial in what *form* such accumulations appear.

The life tenant has made an analysis of the assets and liabilities of the corporation in question. She notes that arrearages for dividends are owing to her on the preferred stock, *if and when* such dividends are declared and paid; her able counsel induced the court below to find that there were sufficient assets after the merger to preserve the intact value and distribute shares of the new common stock to the life tenant. The life tenant insists that such stock be *presently* awarded to her representing the amount of the undeclared dividends in arrears and all accumulated profits and earnings above the intact value. The court below, *in part,* made this award. This action was premature and should not have been taken. Before the corporate reorganization, the trustee on behalf of the life tenant could not have required the corporation to declare and pay arrearages of dividends except in circumstances not herein averred. The new shares, or any part of them, were not issued *in payment* of such arrears. The new stock was issued *in exchange* for the old stock. In the reorganization the value of the arrearages for dividends was considered. But it is only upon the sale or distribution of the stock, or upon the declaration of a stock dividend, or where otherwise the interest of the trustee or beneficiaries ceases in the stock, or where there is a distribution of accumulated profits and earnings, that these matters may be adjudicated. The rule of apportionment, however, requires the intact value of the principal to be preserved. If an apportionment is made *at this time,* it is clearly within the realm of possibility that there could be a change in the corporation's financial status before the stock is sold or distributed. Such change might impair the intact value of the principal and there would then exist no assets with which to recoup the loss. In *Buist's Estate,* 297 Pa. 537, 541, 147 A. 608, we decided "The merger of two or more corporations is neither a sale nor a liquidation of corporate property, but a consolidation of properties, powers, and facilities of the constituent companies". We specifically

held: (542) "the issuance of the new capital stock is merely the issuance of new evidence of ownership to the shareholders. Accepting shares of stock in the merged company is not tantamount to a distribution or division of assets which calls for an apportionment between a life tenant and remainderman." Also, (543) "The life tenant is not entitled to any division until (1) the increased value is declared as a cash dividend, or (2) distributed in the form of a stock dividend, or (3) the affairs of the (corporation) are wound up so that assets are distributed to those entitled to receive them, or (4) there is a sale of this stock so that the connection of shareholder is entirely severed." We have never reversed or modified this decision.

The learned counsel for the life tenant relies chiefly upon what Mr. Justice PARKER wrote in *Fisher's Estate,* 344 Pa. 607, 26 A. 2d 192. She overlooks, however, that this case involved an accounting of the proceeds from the *sale of the stock* (610). It was therefore quite proper to consider *there* all those matters that are alleged to be involved in this case. It would have been premature in that case to have considered such matters unless there had been a sale.

Reliance is also placed upon what we stated in *Daily's Estate,* 323 Pa. 42, 186 A. 754, in connection with the respective rights of life tenant and remainderman in a merger and re-organization. But here again if the opinion of the lower court (24 D. & C. 628) be examined, it will be found that the stock was *"being distributed in kind to the parties entitled"*. That was therefore the appropriate time for such adjudication. In *Cox v. Sellers,* 29 A. 2d 914 (Del.) the corporation was undergoing liquidation. *In Re Smith's Will Trusts; Smith v. Melville* (Ch. Div.) 155 L. T. N. S. 248 (Eng.); 2 All England Law Reports Annotated 1210, the corporation paid to preference shareholders ordinary shares of stock *in satisfaction* of arrearages in preferred stock dividends.

The decree of the court below, as herein modified, is affirmed. The corporate stock in question is to be held by the trustee in accordance with this opinion. One-half the costs to be paid by the appellant life tenant and the other half out of the principal of the estate.