**SOLES v. GRANGER, Collector of Internal Revenue.**

Civil Action No. 6044.

District Court, W. D. Pennsylvania.
March 16, 1948.

Reed, Smith, Shaw & McClay, of Pittsburgh, Pa., for plaintiff.

Elizabeth B. Davis, Sp. Asst. to Atty. Gen., and Elliott W. Finkel, Asst. U. S. Atty., of Pittsburg, Pa., for defendant.

McVICAR, District Judge.

This is an action to recover an alleged overpayment of federal estate taxes in the amount of $9,630.55 with interest thereon of $570.84, or a total of $10,201.39. The facts were stipulated. A brief summary thereof is as follows:

Decedent, Terrissa C. Soles, was one of the income beneficiaries of a trust created by the will of Terrissa C. McCune, who died June 8, 1934. Among the assets of the residuary trust created by the will of Terrissa C. McCune, were 48 shares of no par value common stock of Hookless Fastener Company, a Pennsylvania corporation.

Immediately prior to August 1937 there were outstanding 3,906 shares of no par value common stock of said Company having a stated capital value of $3,515,400 or $900 per share. There were also 94 shares of this stock held as treasury stock.

On August 5, 1937, the board of directors of said Company adopted resolutions by which $1,282,500 in its surplus account was transferred to the capital account, increasing that account to $4,882,500.

On October 5, 1937, the stockholders of the Company approved a resolution to

amend the corporate charter. The Company thereupon issued 976,500 shares of new stock having an aggregate par value of $4,882,500 in exchange for 3,906 shares of old stock outstanding.

Pursuant to said recapitalization, T. F. Soles, as trustee of the residuary trust under the will of Terrissa C. McCune, received 12,000 shares of the new stock of Talon, Inc., in exchange for the 48 shares of the old stock of the Hookless Fastener Company then owned by the trust.

T. F. Soles, as executor of the estate of Terrissa C. McCune, filed his first and final account in the Orphans' Court of Allegheny County, Pennsylvania, in 1935. He reported the 48 shares of Hookless Fastener Company as part of the balance in his hands as executor. His account was confirmed absolutely and a decree of distribution was made decreeing all of said shares to T. F. Soles as trustee for the purposes specified in the will of Terrissa C. McCune.

T. F. Soles, as testamentary trustee under the will of Terrissa C. McCune, filed his first and final account as trustee in the Orphans' Court, Allegheny County, Pennsylvania, wherein he reported the receipt on October 13, 1937 of 12,000 shares of $5.00 par value common stock of Talon, Inc., in exchange for the 48 shares of common stock of Hookless Fastener Company. His account was confirmed absolutely and on October 25, 1944, a decree of distribution was entered by said Orphans' Court decreeing 4,000 shares of said stock to each of the three remaindermen, namely, Alva C. Cochran, Iva P. Murphy and Ernest R. Cochran as corpus.

T. F. Soles, as executor under the will of Terrissa C. McCune, filed his inventory and appraisement as executor and his first and final account was confirmed absolutely and on June 29, 1943, a decree of distribution was entered by said Orphans' Court. Said executor did not include any part of the 12,000 shares of common stock of Talon, Inc. above referred to in the inventory and appraisement in his account, or in his audit statement.

The Commissioner of Internal Revenue determined that decedent, as beneficiary of one-third of the income, was entitled to receive at that time 1,120 shares of the new stock distributed to the trustee. He further determined that the value of said stock was $36,960 and included said amount in decedent's gross estate for federal estate tax purposes.

On October 19, 1944, plaintiff filed with the Collector of Internal Revenue a claim for refund of said tax together with interest. Said claim was rejected August 20, 1946 by the Commissioner of Internal Revenue.

The only question involved in this case is whether the action of the Commissioner of Internal Revenue in including in decedent's gross estate, 1,120 shares of the new stock of Talon, Inc. as part of her gross estate was correct.

The applicable statute, 26 U.S.C.A. Int. Rev.Code, § 811, is as follows:

"Sec. 811. Gross estate

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

"(a) Decedent's interest. To the extent of the interest therein of the decedent at the time of his death."

In the application of the Federal Revenue Acts, local law controls in determining the nature of the legal interest which the taxpayer had in the property sought to be reached by the statute. In Morgan v. Commissioner of Internal Revenue, 309 U.S. 78, 60 S.Ct. 424, 426, 84 L.Ed. 585 it is stated:

"State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed. * * * If it is found in a given case that an interest or right created by local law was the object intended to be taxed, the federal law must prevail no matter what name is given to the interest or right by state law."

The rule in Pennsylvania is set forth in Nirdlinger's Estate, 290 Pa. 457,

139 A. 200, 203, 56 A.L.R. 1303, as follows:

"(b) Under the Pennsylvania or American rule, adopted in most American jurisdictions, the rights of the life tenant and the remainderman to an extraordinary cash or a stock dividend declared during the life tenancy are determined by a division of the dividend between the claimants so as to preserve intact the book value of the devised property (the corpus) as it existed at testator's death. This was made clear by the decision in Earp's Appeal, 28 Pa. 368, long recognized as a leading authority. The effect of the rule is to give to the life tenant the income which has been earned since the trust came into being, but, at the same time, to preserve the value of the corpus as it was at the date of the death of the testator, or, to use a more convenient term, to preserve the intact value of the estate. This intact value includes the par value of the stock, plus any accumulation of income earned before the death of the testator. Earp's Appeal, supra. From it must be subtracted capital losses. Dickinson's Estate, 285 Pa. 449, 132 A. 352. In Earp's Appeal, supra, we said, 'The distribution of it [the stock dividend] among the stockholders in the form of new certificates has no effect whatever upon the equitable right to it. It makes no kind of difference whether this fund is secured by 540 or by 1,350 certificates. Its character cannot be changed by the evidences given to secure it. Part of it is principal—the rest is "income" within the meaning of the will. The principal must remain unimpaired during the lives of the appellants (life tenants) and the "income" arising since the death of the testator is to be distributed among them. Standing upon principle and upon the intent of the testator, plainly expressed in his will, we have no difficulty whatever in making this disposition of the fund.' In Pritchitt v. Nashville Trust Co., 96 Tenn. 472, 36 S.W. 1064, 33 L.R.A. 856, it was said: 'There can be no doubt that reserved and accumulated earnings * * * are corporate property; nevertheless, we are unable to see how that fact determines or affects the question of interest therein as between life tenant and remainderman of shares. Those persons acquire their interest under the will or deed, and not through any action of the corporation.' "

█ This rule is applicable only if a dividend was actually paid by the corporation. No such dividend was paid in this case.

██ In Green v. Philadelphia Inquirer, 329 Pa. 169, 175, 196 A. 32, 34, it is stated:

"The directors were under no duty to declare all of the corporation's net earnings in dividends. Stockholders are not entitled to the earnings as such of a corporation. A corporation is an entity separate and distinct from its stockholders, and a dividend declaration is necessary to create in the stockholder any ownership or other property right in the earnings."

In Buist's Estate, 297 Pa. 537, 543, 147 A. 606, 608, the Court stated:

"The life tenant is not entitled to any division until (1) the increased value is declared as a cash dividend, or (2) distributed in the form of a stock dividend, or (3) the affairs of the bank are wound up so that assets are distributed to those entitled to receive them, or (4) there is a sale of this stock so that the connection of shareholder is entirely severed."

In Nirdlinger's Estate, 327 Pa. 160, 193 A. 33, 38, the Court stated:

" * * * The retention of surplus does not vest title to it in those persons who would have received it if it had been distributed as earned, no matter when and how distribution takes place, Neafie's Estate, supra, [325 Pa. 561, 191 A. 56]; Opperman's Estate (No. 1), supra, 319 Pa. 455, at pages 461, 462, 179 A. 729; Nirdlinger's Estate, supra, 290 Pa. 457, at page 477, 139 A. 200, 56 A.L.R. 1303; nor can the estate of a deceased life tenant claim such profits withheld during his lifetime and distributed thereafter, except in the instances mentioned."

The record shows the 12,000 shares of new $5.00 par stock of Talon, Inc., received by the trustee, were treated by the trustee as corpus and retained by him.

In King's Estate, 1944, 349 Pa. 27, 30, 36 A.2d 504, 506, 153 A.L.R. 488, the life

tenant claimed a number of shares of new common stock as represented by accumulated dividends on the old preferred stock. The Court held that the life tenant was entitled to nothing and that there could be no allocation until the new shares had been sold by the trustee. The Court stated:

"* * * The life tenant insists that such stock be presently awarded to her representing the amount of the undeclared dividends in arrears and all accumulated profits and earnings above the intact value. The court below, in part, made this award. This action was premature and should not have been taken. Before the corporate reorganization, the trustee on behalf of the life tenant could not have required the corporation to declare and pay arrearages of dividends except in circumstances not herein averred. The new shares, or any part of them, were not issued in payment of such arrears. The new stock was issued in exchange for the old stock. In the reorganization the value of the arrearages for dividends was considered. But it is only upon the sale or distribution of the stock, or upon the declaration of a stock dividend, or where otherwise the interest of the trustee or beneficiaries ceases in the stock, or where there is a distribution of accumulated profits and earnings, that these matters may be adjudicated. The rule of apportionment, however, requires the intact value of the principal to be preserved. If an apportionment is made at this time, it is clearly within the realm of possibility that there could be a change in the corporation's financial status before the stock is sold or distributed. Such change might impair the intact value of the principal and there would then exist no assets with which to recoup the loss. In Buist's Estate, 297 Pa. 537, 541, 147 A. 606, 607, we decided "the merger of two or more corporations is neither a sale nor a liquidation of corporate property, but a consolidation of properties, powers, and facilities of the constituent companies". We specifically held, (297 Pa. 542, 147 A. 608): 'The issuance of the new capital stock is merely the issuance of new evidence of ownership to the shareholders. Accepting shares of stock in the merged company is not tantamount to a distribu-

tion or division of assets which calls for an apportionment between life tenant and remaindermen.' Also, (297 Pa. 543, 147 A. 608) 'The life tenant is not entitled to any division until (1) the increased value is declared as a cash dividend, or (2) distributed in the form of a stock dividend, or (3) the affairs of the (corporation) are wound up so that assets are distributed to those entitled to receive them, or (4) there is a sale of this stock so that the connection of shareholder is entirely severed.' We have never reversed or modified this decision."

The question involved here was before the Orphans' Court of Allegheny County, Pennsylvania, in the Estate of Lewis Walker, Sr., Deceased, 95-A of 1943 and 95-C of 1943. There, as here, the trustee treated as principal the shares of new stock of Talon, Inc. received in October, 1947 in exchange for the stock of Hookless Fastener Company theretofore held pursuant to the plan of recapitalization. The trust agreements vested the power to make apportionment in the trustees. The Auditing Judge held that the life beneficiaries were not entitled to apportionment until the new stock was sold, stating:

"The trustees have made no apportionment and deny the right thereto. It is their opinion that there has been no impairment of the corpus of this trust as it existed at the time when the transfer of surplus to capital and the exchange of stock was made and no extraordinary dividend was intended or declared. There is no testimony which shows that they have made any mistake and no testimony indicating that they have been arbitrary or faithless in the exercise of the power to apportion exclusively committed to them by the trustor. The absence of fraud or mistake leaves the court powerless to substitute its judgment for that of the Trustees."

"The testimony shows that this corporation has had remarkable success and is at the present time a prosperous, going concern, producing profitably a very useful article of commerce. It is true that the patents which have been the basis of its success have expired and that future competition will test the ability of the present

422

and future managers of Talon, Inc. to continue the success of the past and maintain the financial standing. The issuances of the preferred stock charged upon all of the assets of the corporation and distribution of it in dividends to the life benficiaries may impair the value of the corpus of this estate. The Guardian and Trustee Ad Litem has correctly reported that this stock, when distributed, is an extraordinary dividend. Notwithstanding the distribution of preferred stock to life beneficiaries, for which credit is taken in the account, it does not appear that the intact value of the corpus has been impaired, but, there can be no assurance from anything that appears in this record now that future payments will not impair the intact value. The acceptance of the preferred stock dividends by the life beneficiaries with their lien on all of the common stock, including the corpus of this trust which is to be preserved for the remaindermen, is an advantage given to them which was not contemplated by the trustor and tends to defeat the scheme planned for remaindermen. The creation of the preferred stock for the purpose of paying dividends jeopardizes their interest.

"King's Estate, 1944, 349 Pa. 27, 36 A.2d 504, 153 A.L.R. 488 Stearne, J., is offered as a complete bar to a decree favorable to the Exceptants. It holds that there can be no apportionment until after a sale of the stock by the Trustees. Whether it would be a bar to an apportionment while the Trustees hold the stock of Talon, Inc., if the payment of extraordinary dividends continues and decreases the value of the remaindermen's interest, without a sale of the stock would be a difficult question to answer and places a burden on the accounting trustees to see that there is no invasion of the corpus, if they are not exonerated by the discretion given to them by the trust agreement. For present purposes we are obliged to observe the rule of King's Estate, supra, and hold that apportionment by the Court is not a right available to the Exceptants."

I conclude from the above cases that the transfer of $1,282,500 from the surplus account of the Hookless Fastener Company to its capital account, or the issuance of new stock in exchange for its common stock, or either or both, was not the equivalent of a declaration of a stock dividend, or an apportionable distribution of earnings.

Plaintiff is entitled to judgment with costs. Let an order be prepared and submitted.