Tucker *v.* Tucker, Appellant.

Argued January 15, 1952. Before DREW, C. J., STERN, STEARNE, BELL, CHIDSEY and MUSMANNO, JJ.

reargument refused April 16, 1952.

10

*Earl Jay Gratz,* with him *John C. Noonan,* for appellant.

' *Herbert A. Barton,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, March 24, 1952:

This controversy is between a surviving partner and trustees under the will of the deceased partner concerning the amount to which decedent's estate was entitled in settlement of his interest in the partnership.

By agreement dated April 1, 1925, Louis B. Tucker and Joseph P. Tucker, who were brothers, formed a partnership under the name of Bernard Tucker's Sons to carry on the towing, stevedoring and shipyard business which their father had established before them. Paragraph five of the agreement provided as follows: "In the event of the death of either partner all of the property . . . of the deceased partner which is in the firm shall remain in the said business for a further period of two years after the deceased partner's death upon the same terms and conditions and operated in the same manner as during his lifetime, . . . but without any right on the part of [his] personal representative to take any part whatever in the conduct, management or direction of the business, the surviving partner having the sole right to continue the conduct and management of the same. At the end of said period of two years the interest of the deceased partner of the firm shall be appraised by a disinterested third person agreeable to the surviving partner and to the Trustees of the deceased partner, . . . and the surviving partner shall have the right to purchase the interest of the deceased partner in the firm at the appraised value. If the surviving partner will not buy, then the business of the firm shall be liquidated by the

surviving partner and the interest of the deceased partner therein shall be paid over to his estate, unless by the mutual agreement of the surviving partner and the unanimous consent of all the Trustees of the deceased partner, said interest is allowed to remain in the firm for a longer period upon such terms and for such period as they may agree upon." Louis Tucker died on December 2, 1940, leaving a will in which he named his wife and his son as Trustees of his estate, and authorized them to continue his interest in the business as provided in the partnership agreement.

Under date of April 15, 1942, Joseph Tucker entered into an agreement with the Trustees in which the parties stated that they wished to continue the business as authorized in decedent's will with respect to his interest therein, and that they were desirous of adjusting the accounts of the two partners. Accordingly it was agreed that the provisions of paragraph five of the agreement dated April 1st, 1925, should be extended and become operative for a further period of five years from December 1, 1941; that the respective interests of the parties in the partnership capital and fixed assets should be equal; that all debit and credit balances of either of the parties as of December 2, 1940, with a certain exception not here relevant, should be cancelled; that Joseph Tucker should each year receive from earnings a sum equivalent to twenty per cent thereof after proper depreciation and reserves were deducted; that the remaining profits, after deducting therefrom such bonuses to employes as should from time to time be mutually agreed upon by the parties, should be distributed equally between the estate and Joseph Tucker; and that Joseph Tucker should devote his entire time and attention to the conduct of the business. Under and by virtue of this agreement the business was continued until December 1, 1946, without any

12

friction or any complaint whatever by either of the parties.

As December 1, 1946 approached, the attorney for the surviving partner, Joseph Tucker entered into negotiations with the attorney for the Trustees looking toward a continuation of the business through an extension of the 1942 agreement, Joseph Tucker seeking to obtain a provision for a fixed salary for himself which the Trustees were unwilling to grant. Meanwhile the business was continued under his management, and, on May 14, 1947, he wrote to the Trustees stating that he desired to have the interest of the estate appraised by a disinterested third person in accordance with paragraph five of the agreement of April 1, 1925, and suggesting the name of a person as such appraiser,—a suggestion that proved acceptable to the Trustees. Accordingly appraisals were obtained of the real estate and the floating equipment which were accepted by the parties as being fair and satisfactory. The attorneys then agreed that November 30, 1947, which was the end of the fiscal year, should be taken as the time for ascertaining the amount to be paid to the estate, that the accountant who had always previously acted for the partnership should make up his report of the capital and profits as of that date as soon as possible thereafter, and that settlement should then be made on the basis of that report and the appraisals. Under date of October 28, 1947, the attorney for Joseph Tucker wrote a letter to the attorney for the Trustees confirming this understanding, to which the latter replied that all the proposals therein stated were approved with the exception that the division of the profits for the year ending November 30, 1947, should not be made on the same basis as for the year ending November 30, 1946,—in other words, that Joseph Tucker should not receive as compensation for his services the

twenty per cent of the profits that had been theretofore regularly paid to him under the 1942 agreement. The accountant's report was completed on January 14, 1948, and, as modified by the appraisals of the real estate and the equipment, showed the amount due the estate as of November 30, 1947, to be $38,619.85. A week later, on January 21, 1948, a check in that amount was sent to the attorney for the Trustees marked in full payment, but was returned as inadequate. It was again tendered on February 2, 1948, this time without prejudice to the right of the Trustees to claim any additional sums to which they might consider themselves entitled, and it was accepted on that basis. On December 7, 1948, the Trustees brought the present action against Joseph Tucker to recover on six items, one of which was subsequently withdrawn, which they claimed were due them in addition to the $38,619.85 already received. At the trial of the cause the jury returned a verdict for defendant, but the court granted plaintiffs a new trial on the ground, as to three of the claims, that plaintiffs should have received binding instructions in their favor, and, as to the other two, that the jury possibly gave them insufficient attention because they were small in amount compared to the other claims. From the order granting a new trial defendant now appeals.

It is to be noted at the outset that the testimony offered at the trial was free of any disputes or contradictions, and the facts have been established by the jury in conformity therewith. All of the claims presented by plaintiffs can be, and must be, disposed of by the application of the appropriate legal principles to the admitted facts, and therefore there is neither need nor justification for the holding of another trial.

The first of plaintiffs' claims is that defendant was not entitled to twenty per cent of the profits of the

business as his compensation for services rendered during the year from December 1, 1946 to November 30, 1947. They rely for this contention on section 42 of the Uniform Partnership Act of March 26, 1915, P. L. 18, which provides that "When any partner retires or dies, and the business is continued . . . without any settlement of accounts as between him or his estate and the person or partnership continuing the business, unless otherwise agreed, he or his legal representative as against such persons or partnership may have the value of his interest at the date of dissolution ascertained, and shall receive . . . an amount equal to the value of his interest in the dissolved partnership with interest, or, at his option, or at the option of his legal representative, in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership; . . . ." In our opinion this section is not applicable to the present situation because, in the agreement of April 15, 1942, there *was* a settlement of accounts between the estate and the surviving partner, so that the condition upon which the section is based does not here exist; moreover, it provides for valuation of the decedent's interest as of the date of dissolution, which (section 31(4) of the Act) means at the time of decedent's death, whereas here the parties agreed otherwise. Defendant, on the other hand, claims that section 23 of the Act applies, which provides that "When a partnership for a fixed term . . . is continued after the termination of such term . . . without any express agreement, the rights and duties of the partners remain the same as they were at such termination, so far as is consistent with a partnership at will." From this defendant argues that he was entitled to the twenty per cent compensation for the year 1947, the same as he had previously been receiving. We are of opinion, however, that this section is likewise inapplicable

because it obviously relates only to a partnership be-. tween living partners. Here there was no such partnership after decedent's death on December 2, 1940. The provision in the partnership agreement that his property should remain in the business for a certain period after his death and meanwhile share in the profits did not project the Trustees of his estate into the business as successor partners with the surviving partner, nor was any change in that regard effected by the agreement of 1942, which merely extended, though on other terms, the period during which the then existing arrangement was to continue. But while, therefore, there is apparently no section of the Partnership Act which covers the present situation, the fact is that, even under plaintiffs' contention, they are entitled only to their share of the *net* profits, a right assured to them by judicial decisions even prior to the Partnership Act,* and which indeed is admitted by defendant. But the real question remains as to whether, in computing such profits, deduction should be made for compensation to the surviving partner for services in the operation of the business after November 30, 1946, even though that operation was without the approval of the Trustees. Admittedly the continuation of the business involved no fraud on his part, but, on the contrary, was pursued by him in good faith while negotiations were in progress for an extension of the 1942 agreement and, later, for the determination by the appraisers and the accountant of the proper amount due the estate. Under such circumstances the Trustees, electing to share in the gains made as a result of the services he rendered, were bound to allow him for such services reasonable

---

* *Brown's Appeal*, 89 Pa. 139, 147; *Maloney's Estate*, 233 Pa. 614, 617, 82 A. 958, 959; *Eisenlohr's Estate (No. 1)*, 258 Pa. 431, 435, 102 A. 115, 116; *Waring v. Cram*, 1 Parson's Select Equity Cases 516, 522.

16

compensation: *Bracht v. Connell,* 313 Pa. 397, 404, 405, 170 A. 297, 300; *East & West Coast Service Corporation. v. Papahagis (No. 1),* 344 Pa. 183, 187, 188, 25 A. 2d 339, 341; *Brooks v. Conston,* 364 Pa. 256, 263, 264, 72 A. 2d 75, 79; *Consaul, Administrators, v. Cummings, Administrator,* 222 U. S. 262, 270; 80 A. L. R. 79, et seq. The provision in section 18 (f) of the Partnership Act that "No partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs" does not militate against his right to such remuneration because his purchase of the decedent's interest was in effect a winding up of the partnership affairs within the intendment of the statute; (cf. *Bracht v. Connell,* supra, pp. 404, 405, 170 A. 297, 300). Since the parties had originally agreed that a fair compensation for his services was twenty per cent of the profits, that valuation should be accepted as determining the amount to which he was likewise entitled for the year from December 1, 1946 to November 30, 1947. We hold, therefore, that plaintiffs are not entitled to recover on their claim in connection with the deduction made by defendant on account of his services in managing the business during that year.

A second claim of plaintiffs arises from the fact that one Ahrens, who had been employed by Bernard Tucker's Sons for some 40 years, received, under an oral agreement made by the attorneys for the parties in 1942, a bonus of eight per cent of the annual profits in addition to his salary; this bonus was paid to him regularly, without any objection on the part of plaintiffs, from that time on for each of the years up to 1946 inclusive. They dispute, however, a similar allowance made to Ahrens for the year ending November 30, 1947. While technically a bonus is a sum volun-

tarily paid to an employe over and above his wages, it is in reality merely an additional arrangement for compensation for his services, and certainly in this case must be regarded as having been a justified and necessary expense of the business and therefore properly deductible in computing the net profits. In view of their initial approval it must be concluded that the Trustees conceded that Ahrens' services were worth the amount agreed upon. It is true that the bonus for the year in question was not actually paid to Ahrens pending the present controversy between the parties, but liability therefor was entered on the books of the business, and, being now allowed, will, of course, be payable to Ahrens' estate, he having died in the meantime. This claim of plaintiffs, therefore, is denied.

A third claim is in regard to a deduction from profits of payments made for repairs during the year ending November 30, 1947, to three tugboats owned and operated by the business, which repairs were charged as an operating expense. Plaintiffs complain that the cost of the repairs was greater than the appraised valuation of the tugs on the basis of which the estate was paid. It is not denied, however, that the repairs were necessary, and that their cost was fair and reasonable, as the jury found as a fact. It is wholly immaterial, and not at all unusual, that the appraised, marketable value of a repaired article should fail to reflect expenditures made in repairing it, but, for purposes of operation by the business, the repairs here were clearly justified as against the alternative of being obliged to purchase new, highly expensive tugs. Accordingly, this claim of plaintiffs must be rejected.

A fourth claim relates to the deduction from profits of certain interest charges carried on the books as being due defendant. It appears that during the lifetime of decedent both partners, when the business need-

ed money, borrowed on their insurance policies and placed the proceeds in the enterprise to enable it to operate. The interest on these loans was paid to the respective partners out of the partnership funds. By the agreement of 1942, however, all debit and credit balances of the partners were cancelled as of December 2, 1940, the date of Louis Tucker's death; therefore Joseph Tucker was not thereafter entitled to any further payments of interest on loans previously made. Defendant claims that all payments of interest by the business were shown on the annual audits of the accountant which were regularly submitted to the Trustees, that they never objected thereto, and that they are therefore precluded from doing so at this time. But it appears that all interest payments, including those made on various other loans, were lumped together in the accountant's reports, so that the Trustees were not put on notice that these particular interest charges were being paid to defendant. Accordingly we are of opinion that plaintiffs are entitled to recover on this item, amounting to $646.47.

We come to the final claim of plaintiffs, which is for a one-half share of the profits of the business earned during the period from December 1, 1947 to February 2, 1948. Ordinarily, of course, they would be so entitled, for until the latter date decedent's capital remained in the business. However, defendant's attorney testified that on October 15, 1947, it was orally arranged between him and plaintiffs' attorney that, as hereinbefore stated, November 30, 1947, being the end of the fiscal year and therefore the most convenient date, should be the time for ascertaining the amount to be paid to the estate, that the transfer of decedent's interest should be effectuated as of that date, and that defendant should make settlement on that basis as soon as the accountant's report of the amount due would

be available. This understanding was confirmed in a letter to plaintiffs' attorney and a reply by him in which he approved, inter alia, of the time thus fixed. That such an agreement was made was not controverted by either plaintiffs or their attorney; on the contrary it was apparently admitted by plaintiffs in their answer to defendant's "New Matter", and the jury so found. Plaintiffs argue that it was not binding in the absence of proof that their attorney had the authority to make such an arrangement, and it is true not only that a fiduciary cannot delegate to another the performance of a duty which involves judgment and discretion, but that ordinarily an attorney cannot, without special authority from his client, compromise the latter's claim, release his cause of action, or surrender any of his substantial rights. Here, however, the arrangement agreed to by plaintiffs' attorney did not infringe upon either of those rules. Defendant had the right to liquidate the business or to purchase decedent's interest therein; indeed, it was his duty to do one or the other, and, on May 14, 1947, he announced that he desired to pursue the latter alternative. But it was necessary to have an audit made to determine the value of decedent's interest, and a date as of which the accounting should be made had to be agreed upon. The fixing of that time involved no exercise of judgment or discretion as affecting any of plaintiffs' rights, neither did it involve a surrender of any such rights or compromise of any claim, for when it was made in October, 1947, the parties could not anticipate whether the two months subsequent to November 30, 1947 would show profits or losses in the conduct of the business, and therefore neither party was foreseeably obtaining any advantage or suffering any disadvantage by the selection of a date. The agreement was, therefore, in our opinion, well within the implied authority of plain-

tiffs' attorney as being merely the arrangement of a detail incident to the transfer to defendant of decedent's interest in the business. Incidentally, it is to be noted that neither in the pleadings, nor in the testimony, nor in their points for charge, nor in any exception to the charge, did plaintiffs challenge the validity of the agreement by raising any question in regard to the authority of their attorney to make it. In the negotiations for the agreement of 1942 and in all legal matters relating to the conduct of the business thereafter, as well as in the negotiations in 1946 for the extension of the agreement, in the selection of the accountant and the appraisers, in the examination of the annual audits of the business, in the fixing of the bonus to Ahrens, and in numerous other matters, plaintiffs' attorney acted for them and his agreements on their behalf never met with their disapproval; he was apparently held out by them at all times as being their general, authorized representative in connection with everything relating to the safeguarding and ultimate disposal of decedent's interest in the business. We conclude, therefore, that they are bound by the agreement that the accounting was to be made as of November 30, 1947. The accountant apparently did not complete his audit as of that date until the middle of January, 1948, but since defendant had offered to purchase decedent's interest in accordance with his right so to do, and was ready, willing and able promptly to pay for it as of the time agreed upon, he was not bound to account for profits thereafter accruing: *George, Exrxs., v. Richards,* 361 Pa. 278, 283, 64 A. 2d 811, 813. Accordingly, plaintiffs' claim for such profits must be disallowed.

The order of the court below granting plaintiffs' motion for a new trial is reversed, and the record is remanded with direction to enter judgment for plain-

tiffs in the sum of $646.47, with interest from February 2, 1948.